[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-12012-J

_____

IN RE: MARVIN GRIFFIN,

Petitioner.

_____

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)

_____

Before TJOFLAT, HULL and JULIE CARNES, Circuit Judges.

B Y   T H E   P A N E L:

Pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A), Marvin Griffin has filed an application seeking an order authorizing the district court to consider a second or successive motion to vacate, set aside, or correct his federal sentence, 28 U.S.C. § 2255. Such authorization may be granted only if this Court certifies that the second or successive motion contains a claim involving:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." *Id.* § 2244(b)(3)(C); *see also Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1357-58 (11th Cir. 2007) (explaining that this Court's determination that an applicant has made a *prima facie* showing that the statutory criteria have been met is simply a threshold determination).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In 1998, after a jury trial, Griffin was convicted of attempting to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. The presentence investigation report ("PSI") indicated that Griffin had these prior Florida convictions: (1) a 1984 conviction for burglary of a dwelling; (2) 1985 convictions for disorderly conduct and obstructing a law enforcement officer; (3) 1986 convictions for robbery and resisting an officer without violence; (4) a 1988 conviction for driving with a suspended license; (5) a 1989 conviction for resisting arrest without violence; (6) 1990 convictions for driving with a suspended license and resisting an officer without violence; and (7) 1992 convictions for grand theft and petit theft. The PSI reported that Griffin's drug quantity was six kilograms of cocaine, which he picked up on the day of his arrest.

The PSI stated that Griffin was a career offender under U.S.S.G. § 4B1.1 because of his 1984 conviction for burglary of a dwelling and 1986 conviction for robbery. Section 4B1.2, which defines career-offender-predicate "crimes of violence," expressly stated that "crime of violence" includes burglary of a dwelling. The PSI also reported that, during the 1986 predicate robbery, Griffin snatched open the victim-driver's car door and reached over the victim-driver to

grab the victim's bag.   The victim and Griffin "struggled violently."   Griffin ended up forcibly tearing the bag off of its strap, leaving the victim holding the strap as he fled.[1]

The career offender enhancement predicated on the 1984 burglary of a dwelling and the 1986 robbery increased Griffin's criminal history category to VI.   Griffin's offense level of 37 and criminal history category of VI resulted in a guidelines range of 360 months' to life imprisonment.   The district court found that Griffin was a career offender, adopting the PSI's factual findings and recommendations concerning the enhancement, and sentenced Griffin to 360 months' imprisonment on the drug conspiracy.[2]

Griffin filed a direct appeal challenging, *inter alia*, his career offender status.   This Court affirmed his conviction and sentence, concluding that the "law of our circuit is clear" on whether the Sentencing Commission exceeded its statutory authority in adopting an application note to § 4B1.2, which defines the terms used in the § 4B1.1 career offender guideline.   This Court also rejected Griffin's argument that the government was required to comply with the 21 U.S.C. § 851 notice requirement before his sentence could be enhanced under the Guidelines.   On direct appeal, Griffin did not challenge whether his prior burglary of a dwelling and robbery convictions qualified under the definition of a crime of violence in the Guidelines.

In 2002, Griffin filed his first § 2255 motion based on ineffective assistance of counsel, which the district court denied.   This Court determined that Griffin's appeal was not timely filed.

---

[1]The PSI shows that Griffin fled to a waiting car driven by his codefendant, and entered the car, which sped away, and a high-speed chase with the police ensued.

[2]The government argued for an obstruction of justice increase in the base offense level, which was denied by the district court.   Defense counsel requested a U.S.S.G. § 5K2.0 departure from the guidelines range, based on the grounds that Griffin's actual culpability was overstated. *See* U.S.S.G. § 5K2.0 (stating that the sentencing court may impose a sentence outside of the applicable guidelines range in certain circumstances).   The probation officer responded, stating that Griffin had six kilograms of cocaine, and the district court ultimately did not grant a departure.

## II.  GRIFFIN'S CURRENT § 2255 APPLICATION

In his application, Griffin seeks to raise two claims in a second or successive § 2255 motion.  Griffin asserts that his claims rely upon new rules of constitutional law.  In his first claim, Griffin asserts that his sentence was improperly enhanced under the career offender guideline, based on his prior convictions for burglary of a dwelling and robbery.  Griffin's first claim relies on *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551 (2015), in which the United States Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA") was unconstitutionally vague, and Griffin asserts that the residual clause of the ACCA is identical to the relevant clause in the career offender guideline.   In his second claim, Griffin asserts that his sentence was improperly enhanced under the career offender guideline based on his prior conviction for burglary of a dwelling, because the burglary statute under which he was convicted is indivisible.  Griffin's second claim relies upon an allegedly new rule of law that the modified categorical approach cannot be applied to indivisible statutes, from *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276 (2013).  Griffin was sentenced in 1998, pre-*Booker*,[3] when the Guidelines were mandatory.

The ACCA defines violent felony as any crime punishable by a term of imprisonment exceeding one year that:

(i)     has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii)    is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

---

[3]*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).

18 U.S.C. § 924(e)(2)(B). The first prong of this definition is sometimes referred to as the "elements clause," while the second prong contains the "enumerated crimes" and, finally, what is commonly called the "residual clause." *United States v. Owens*, 672 F.3d 966, 968 (11th Cir. 2012).

Section 4B1.1 of the Sentencing Guidelines provides that a defendant is classified as a career offender if he (1) was at least 18 years old at the time of the offense of conviction; (2) the offense of conviction was a felony and either a crime of violence or a controlled substance offense; and (3) he had at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). The Guidelines define "crime of violence" as any offense under federal or state law that is punishable by imprisonment for more than one year and:

(1)     has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2)     is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

On June 26, 2015, the Supreme Court in *Johnson* held that the residual clause of the ACCA is unconstitutionally vague. *Johnson*, 576 U.S. at ___, 135 S. Ct. at 2557-58, 2563. The Supreme Court clarified that, in holding that the residual clause is void, it did not call into question the application of the elements clause and the enumerated crimes clause of the ACCA's definition of a violent felony. *Id.* at ___, 135 S. Ct. at 2563. On April 18, 2016, the Supreme Court held in *Welch v. United States* that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review. *Welch v. United States*, 578 U.S. ___, 136 S. Ct. 1257 (2016).

In 2015, this Court issued our decision in *United States v. Matchett*, 802 F.3d 1185, 1193-96 (11th Cir. 2015), and held that the vagueness doctrine, upon which the Supreme Court invalidated the ACCA's residual clause in *Johnson*, did not similarly apply to the Sentencing Guidelines. We explained that the vagueness doctrine applies both to statutes that define elements of crimes and to statutes fixing sentences, but noted that "the advisory guidelines do neither." *Id.* at 1194. We then emphasized that, because the pre-Guidelines sentencing scheme that gave plenary discretion to sentencing judges did not violate the notice requirement of the Due Process Clause, advisory guidelines that merely "inform a sentencing judge's discretion also cannot violate the notice requirement." *Id.* at 1194-95. Finally, we explicitly rejected Matchett's policy-based argument that allowing the identically worded residual clause in § 4B1.2(a) to stand would upend the sentencing process by forcing sentencing courts to apply a clause that *Johnson* determined to lack precise meaning. *Id.* at 1195. We explained that

> Although *Johnson* abrogated the previous decisions of the Supreme Court interpreting the residual clause of the Armed Career Criminal Act, sentencing courts interpreting the residual clause of the guidelines must still adhere to the reasoning of cases interpreting the nearly identical language in the Act. [Matchett's] policy concern is properly addressed to the United States Sentencing Commission . . . .

*Id.* at 1195-96.

Before analyzing Griffin's claims, we point out that an allegation by a petitioner that meets § 2255(h)'s requirements in the abstract only "represent[s] the minimum showing" necessary to file a successive § 2255 motion because, under § 2244(b)(3)(C), the applicant also must make "a *prima facie* showing that the application satisfies the requirements of this subsection." *In re Holladay*, 331 F.3d 1169, 1173, 1177 (11th Cir. 2003) (quotation marks omitted) (granting a state death-row inmate's successive application because he had proffered

detailed evidence, in satisfaction of § 2244(b)(3)(C), that showed "a reasonable likelihood that [he] is mentally retarded" to support his proposed *Atkins* claim).    Accordingly, it is not enough for a federal prisoner to simply identify *Johnson* and the residual clause as the basis for the claim or claims he seeks to raise in a second or successive § 2255 motion, but he also must show that he was sentenced under the residual clause in the ACCA and that he falls within the scope of the new substantive rule announced in *Johnson*.    *See, e.g., id.*; 28 U.S.C. § 2244(b)(3)(C).

### III.   *JOHNSON* CLAIM

Here, Griffin has not made a *prima facie* showing that his first claim satisfies the criteria of § 2255(h)(2).    Griffin was not sentenced under the ACCA or beyond the statutory maximum for his drug crime.    Rather, this case involves only the career offender guideline.

Griffin is unable to make a *prima facie* showing that *Johnson* applies to him in light of our binding precedent in *Matchett* that the Sentencing Guidelines cannot be challenged as unconstitutionally vague.    *See Matchett*, 802 F.3d at 1193-96.

We recognize that Griffin's sentence was imposed in 1998, when the Guidelines were mandatory, and Matchett's sentence was imposed in 2014, when the Guidelines were advisory. For the following reasons, the logic and principles established in *Matchett* also govern our panel as to Griffin's guidelines sentence when the Guidelines were mandatory.

The Guidelines—whether mandatory or advisory— cannot be unconstitutionally vague because they do not establish the illegality of any conduct and are designed to assist and limit the discretion of the sentencing judge.    *Id.* at 1195.   The limitations the Guidelines place on a judge's discretion cannot violate a defendant's right to due process by reason of being vague.   The Guidelines do not define illegal conduct: they are directives to judges for their guidance in

sentencing convicted criminals, not to citizens at large.  *Id.* at 1195-96.  Due process does not mandate notice of where, within the statutory range, the guidelines sentence will fall.

Indeed, a defendant's due process rights are unimpaired by the complete absence of sentencing guidelines.  The Constitution does not require sentencing guidelines in noncapital cases.  *Id.* at 1194.  Because there is no constitutional right to sentencing only under guidelines, the limitations the Guidelines place on a judge's discretion cannot violate a defendant's right to due process by reason of being vague.  *Id.* at 1194-95.  Before Congress enacted the Guidelines, the federal government had indeterminate sentencing.  *Id.* at 1195.  Even vague guidelines cabin discretion more than no guidelines at all.

Further, here too, after his jury trial, the PSI gave Griffin notice of the career offender increase.  It concluded that he qualified as a career offender, recommended that the guideline § 4B1.1 enhancement be applied, and expressly listed his robbery and burglary convictions as the two predicate convictions.   Griffin was accorded adequate due process with respect to the PSI and his guidelines sentence.

Even assuming *arguendo* that, going forward, we somehow can write around our *Matchett* precedent and are bound by *Johnson*'s characterization of the residual clause as unduly vague *for ACCA purposes* when considering whether the residual clause in the career offender guideline in § 4B1.1 *of the Sentencing Guidelines* remains viable, that does not mean that the ruling in *Welch* makes *Johnson* retroactive for purposes of a second or successive § 2255 motion premised on the applicability of *Johnson* to a guidelines challenge, just because the guidelines challenge happens to be based on the residual clause.  The application of *Johnson* to the ACCA was a substantive change in the law because it altered the statutory range of permissible sentences.  That is, application of the ACCA without consideration of *Johnson* elevated the statutory maximum and

produced a sentence that necessarily exceeds the otherwise-applicable unenhanced statutory maximum. *See Welch*, 578 U.S. at ___, 136 S. Ct. at 1265.

By contrast, a rule extending *Johnson* and concluding that it invalidates the crime-of-violence residual clause in the Guidelines would establish only that the defendant's guidelines range had been incorrectly calculated, but it would not alter the statutory boundaries for sentencing set by Congress for the crime. An error in calculating a defendant's guidelines sentencing range does not (and could not) alter the statutory sentencing range set by Congress for the crime within which the sentencing court may impose a sentence, and it would not (and could not) produce a sentence that exceeds the statutory maximum. Instead, such a rule when applied in the guidelines context would produce changes in how the sentencing procedural process is to be conducted—changes that are not entitled to retroactive effect in cases on collateral review in a second or successive § 2255 motion.

The final telling point is this. When the ACCA's residual clause is applied and the challenged sentence exceeds the unenhanced statutory maximum because of the ACCA's residual clause, then *Johnson* requires the district court to reduce the enhanced sentence to at least the unenhanced applicable statutory maximum. In stark contrast, whether the Guidelines are mandatory or advisory, the district court, even without the invalidated residual clause, could still impose a sentence within the same statutory penalty range and indeed the same sentence as before. In fact, in former mandatory guidelines cases, the resentencing would now be under an even more discretionary advisory system that would permit the district court to impose the same sentence.

A rule that the Guidelines must satisfy due process vagueness standards therefore differs fundamentally and qualitatively from a holding that a particular criminal statute or the ACCA sentencing statute—that increases the statutory maximum penalty for the underlying new

crime—is substantively vague.[4]   Given our *Matchett* precedent and for all of the above reasons,

Griffin's first guidelines claim fails.   Accordingly, Griffin has not presented a *prima facie* case

under *Johnson* and *Welch* as to his two predicate crimes of violence under the Guidelines.

## IV.   *DESCAMPS* CLAIM

As to Griffin's second claim based on *Descamps*, we have held that the rule in *Descamps* is

not new and thus is retroactive in a first § 2255 motion case.   *Mays v. United States*, 817 F.3d 728,

734 (11th Cir. 2016) ("As the Supreme Court and other circuits have recognized, *Descamps* did

not announce a new rule—its holding merely clarified existing precedent."); *see United States v.*

*Davis*, 751 F.3d 769, 775 (6th Cir. 2014) (noting that "[t]he Supreme Court in *Descamps* explained

that it was not announcing a new rule, but was simply reaffirming" an existing approach).

In contrast, to open the successive § 2255 door, the rule must be both new and a rule of

constitutional law.   *Descamps* is a rule of statutory interpretation, not constitutional law.   *See*

*Ezell v. United States*, 778 F.3d 762, 763 (9th Cir. 2015) ("[T]he the Supreme Court did not

announce a new rule of constitutional law in *Descamps.*   Rather, it clarified—as a matter of

statutory interpretation—application of the ACCA in light of existing precedent."), *cert. denied*,

136 S. Ct. 256 (2015); *In re Jackson*, 776 F.3d 292, 296 (5th Cir. 2015) ("Nothing in *Descamps*

indicates that its holding announced a new rule that was constitutionally based, and *Descamps* did

not announce that its holding applied retroactively to cases on collateral review."); *In re*

*Blackshire*, 98 F.3d 1293, 1294 (11th Cir. 1996) (holding that a Supreme Court case interpreting a

---

[4]The Supreme Court has not applied *Johnson* to the Sentencing Guidelines, much less made such an extension retroactive for purpose of successive § 2255 motions.   If that were to happen, then we point out that denials of successive applications are without prejudice, and thus our decision does not preclude Griffin from filing a new successive application in the event of future Supreme Court constitutional rulings about the Sentencing Guidelines, subject to all statutes of limitations and tolling provisions.

substantive criminal statute did not announce a new rule of constitutional law).   *Descamps* did not announce a new rule of constitutional law as required by § 2255(h)(2).   *See* 28 U.S.C. § 2255(h)(2); *In re Thomas*, ___ F.3d ___, Nos. 16-12065 & 16-12649, manuscript order at *5-6 (11th Cir. May 25, 2016).

Accordingly, Griffin has not presented a *prima facie* case under *Descamps*, as required by § 2255(h)(2), with regard to his career offender guideline sentence.

## V.   CONCLUSION

Because Griffin has failed to make a *prima facie* showing that he has raised a claim that meets the statutory grounds set forth in 28 U.S.C. § 2255(h), his application for leave to file a second or successive motion is hereby **DENIED**.