JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges,
concurring.
Leonard Sapp was sentenced as a career offender in 2003, before the Supreme Court ruled in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), that the mandatory Sentencing Guidelines were unconstitutional. As a result of Booker, the Sentencing Guidelines are now advisory, and district courts have broad discretion to impose a sentence inside or outside the recommended Guidelines range. See Gall v. United States, 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). But in the era before Booker was decided, the Sentencing Guidelines were “binding on judges.” Booker, 543 U.S. at 234, 125 S.Ct. 738. Indeed, district courts were statutorily required to impose sen *1337 tences within the range established by the Guidelines. See 18 U.S.C. 3553(b)(1) (2000 ed.) (“the court shall impose a sentence of the kind, and within the range” established by the Guidelines) (emphasis added). See also United States v. R.L.C., 503 U.S. 291, 297, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992) (explaining, -pre-Booker: “The answer to any suggestion that the statutory character of a specific penalty provision gives it primacy over administrative sentencing guidelines is that the mandate to apply the Guidelines is itself statutory.”). As a result, the Supreme Court told us, “the fact that the Guidelines were promulgated by the Sentencing Commission, rather than Congress, lacks constitutional significance.” Booker, 543 U.S. at 237, 125 S.Ct. 738. In sum, the mandatory Sentencing Guidelines had “the force and effect of laws.” Id. at 234,125 S.Ct. 738.
Although the mandatory Sentencing Guidelines operated to cabin the discretion of judges, just like sentencing statutes passed by Congress, a panel of our Court recently held that the Supreme Court’s decision in Johnson v. United States, — U.S.-, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), which struck down the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e), as unconstitutionally vague, does not apply to the identical residual clause of the mandatory career offender guideline, U.S.S.G. § 4B1.2(a)(2) (2003). See In re Griffin, No. 16-12012, 823 F.3d 1350, 2016 WL 3002293 (11th Cir. May 25, 2016). The Griffin panel also concluded that, even if Johnson did apply to the residual clause of the mandatory career offender guideline, the Supreme Court’s decision in Welch v. United States, — U.S.-, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016) — which held that Johnson was retroactive to cases on collateral review— did not make Johnson retroactive in cases involving challenges to the Sentencing Guidelines. Although we are bound by Griffin, we write separately to explain why we believe Griffin is deeply flawed and wrongly decided.
1. The Griffin panel said that it was bound by our prior decision in United States v. Matchett, 802 F.3d 1185 (11th Cir. 2015). See Griffin, 823 F.3d at 1354-55, 2016 WL 3002293, at *4. But the Griffin panel was not bound by Matchett, whose holding, in no uncertain terms, applied only to the advisory Sentencing Guidelines. See Matchett, 802 F.3d at 1193 (“The vagueness doctrine does not apply to advisory Sentencing Guidelines.”); id. at 1195 (“[A]dvisory guidelines that inform a sentencing judge’s discretion ... cannot violate the notice requirement.”).
2. The Griffin panel reasoned that “the logic and principles established in Match-ett” compelled the conclusion that the mandatory Sentencing Guidelines could not be challenged under Johnson. See Griffin, 823 F.3d at 1354-55, 2016 WL 3002293, at *4. This makes little sense, however, because the holding in Matchett hinged on the advisory nature of the Guidelines post-Booker. See Matchett, 802 F.3d at 1194 (“Any expectations subject to due process protection ... that a criminal defendant would receive a sentence within the presumptively applicable guideline range did not survive [the] decision in United States v. Booker.”) (citation omitted).
Matchett explained that the advisory Guidelines “are merely the starting point and the initial benchmark, designed to assist the sentencing judge in determining a sentence.” Matchett, 802 F.3d at 1194 (internal quotation marks, citations, and ellipses omitted). It emphasized that “[t]he sentencing judge’s authority to exercise discretion distinguishes the Guidelines from criminal statutes in a significant and undeniable manner.” Id. (quoting United States v. Tichenor, 683 F.3d 358, 364 (7th Cir. 2012)). And Matchett distinguished precedent from another circuit because it *1338 dealt with the mandatory, and not the advisory, Guidelines. See Matchett, 802 F.3d at 1196 (“[T]he Ninth Circuit has stated, in dicta, that the Sentencing Guidelines can be void for vagueness, but that decision was issued when the guidelines were still mandatory.”).
By failing to recognize a distinction between the mandatory and advisory Sentencing Guidelines, the Griffin panel stretched Matchett beyond recognition. The principle underlying Matchett — that the advisory Guidelines do not fix sentences because district courts are permitted, and indeed obligated, to exercise discretion in sentencing — simply does not map onto the mandatory Guidelines in any way. Given the binding nature of the mandatory Guidelines, the Griffin panel could not rely on the Matchett rationale to justify its failure to apply the notice requirement of the Due Process Clause and corresponding vagueness principles. Cf. United States v. Lee, 821 F.3d 1124, 1135-36 (9th Cir.2016) (Ikuta, J., dissenting) (direct appeal case challenging a career offender sentence under the discretionary Guidelines: “In light of the fact that the discretionary Sentencing Guidelines do not raise the same constitutional concerns as mandatory sentencing provisions, I would conclude that any vagueness in the § 4B1.2 residual clause does not violate the Due Process Clause.”).
We have recognized a distinction between the mandatory and advisory Guidelines in cases discussing the rule of lenity, a canon of statutory construction that the Supreme Court has called a “junior version of the vagueness doctrine” because it is similarly concerned with providing fair warning to criminal defendants. See United States v. Lanier, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (internal quotation marks omitted). We held in United States v. Inclema, 363 F.3d 1177, 1182 (11th Cir. 2004), that the rule of lenity applies to the mandatory Sentencing Guidelines, and since then some members of our Court have expressed doubt as to whether that rule applies to the advisory Guidelines. See United States v. Wright, 607 F.3d 708, 719 (11th Cir. 2010) (William Pryor, J., joined by Fay, J., concurring). The key distinction recognized by Judges Pryor and Fay in their Wright concurrence was that the mandatory Guidelines, unlike the advisory Guidelines, statutorily required district courts to impose a sentence within the applicable Guidelines range. See id.
3. The Griffin panel believed that the mandatory Guidelines “cannot be unconstitutionally vague because they do not establish the illegality of any conduct and are designed to assist and limit the discretion of the sentencing judge.” Griffin, 823 F.3d at 1354, 2016 WL 3002293, at *4 (citing Matchett, 802 F.3d at 1195). It is true that the mandatory Guidelines did not criminalize conduct, but that is of no moment.
The Griffin panel’s rationale is completely at odds with Supreme Court precedent, which has long held that vagueness “principles apply not only to statutes defining elements of crimes, but also to statutes fixing sentences.” Johnson, 135 S.Ct. at 2557 (citing United States v. Batchelder, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)). The ACCA itself, which sets a 15-year mandatory minimum prison term for certain defendants, does not establish the illegality of any conduct, but instead fixes certain sentences. Yet the Supreme Court held that the ACCA’s residual clause was void for vagueness. See Johnson, 135 S.Ct. at 2557. And, as discussed above, the mandatory Guidelines operated to fix sentences in almost precisely the same way as statutes setting minimum mandatory sentences. See Booker, 543 U.S. at 233, 125 S.Ct. 738 (explaining that before 2005 the Guidelines were *1339 “mandatory and impose[d] binding requirements on all sentencing judges”).
The text of the ACCA’s residual clause is identical in all respects to the residual clause of the career offender guideline. Not surprisingly, we have interpreted the two clauses using “[precisely the same analytical framework.” United States v. Oliver, 20 F.3d 415, 418 (11th Cir. 1994). See also Turner v. Warden Coleman FCI, 709 F.3d 1328, 1335 n. 4 (11th Cir. 2012) (“The definition of ‘violent felony’ under the ACCA is virtually identical to the definition of ‘crime of violence’ for purposes of the career offender enhancement of § 4B1.1 of the United States Sentencing Guidelines (USSG), so that decisions about one apply to the other.”) (internal citation omitted). And in order to illustrate the “trouble” circuit courts had “making sense of the residual clause” of the ACCA, the Supreme Court in Johnson — in addition to citing decisions construing the ACCA’s residual clause — pointed to cases that inconsistently construed the residual clause of the career offender guideline. See Johnson, 135 S.Ct. at 2560 (citing United States v. Williams, 559 F.3d 1143 (10th Cir. 2009) (a case construing the residual clause of the career offender guideline), and United States v. Carthome, 726 F.3d 503 (4th Cir. 2013) (same)). Booker tells us the undeniable — that the residual clause of the mandatory career offender guideline had the same effect as the ACCA’s identical residual clause. It necessarily follows, then, that Johnson applies with equal force to the residual clause of the mandatory career offender guideline.
4. The Griffin panel, citing Matchett, held that because a defendant has no constitutional right to be sentenced under the Guidelines, the mandatory Guidelines cannot be void for vagueness. See Griffin, 823 F.3d at 1354-55, 2016 WL 3002293, at *4. This reliance on Matchett was again misplaced.
Matchett had cited an Eighth Circuit decision, United States v. Wivell, 893 F.2d 156 (8th Cir. 1990), for a similar proposition. See Matchett, 802 F.3d at 1195. But the Eighth Circuit itself has since said that “[t]he reasoning in Wivell that the guidelines cannot be unconstitutionally vague because they do not proscribe conduct is doubtful after Johnson.” United States v. Taylor, 803 F.3d 931, 933 (8th Cir. 2015). If the Eighth Circuit has doubts about the continuing validity of one of its own decisions, so should we.
In any event, the Supreme Court rejected the syllogism relied upon by Griffin six decades ago. Even if there exists no independent constitutional right to be sentenced under the Guidelines, once the Guidelines were promulgated and made mandatory by Congress, then a defendant’s due process rights attached. See Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (“It is true that a State is not required by the Federal Constitution to provide ... a right to appellate review at all... [But once it does,] at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons like petitioners from invidious dis-criminations.”). Griffin, unfortunately, did not recognize this constitutional reality.
5. The Griffin panel, without a single case citation or other authority in support, ruled alternatively that even if Johnson applied to the residual clause of the mandatory career offender guideline, “that does not mean that the ruling in Welch makes Johnson retroactive for purposes of a second or successive § 2255 motion premised on the applicability of Johnson to a guidelines challenge[.]” Griffin, 823 F.3d at 1355, 2016 WL 3002293, at *5. The premise which Griffin assumed — that a substantive rule of constitutional law expressly made retroactive by the Supreme Court can later be made only partially *1340 retroactive by a circuit court — is wrong. For purposes of collateral review in criminal cases, constitutional retroactivity is an all-or-nothing proposition. See Teague v. Lane, 489 U.S. 288, 316, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion) (“We therefore hold that, implicit in the retroactivity approach we adopt today, is the principle that habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to all defendants on collateral review through one of the two exceptions we have articulated.”); Butler v. McKellar, 494 U.S. 407, 412-13, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990) (applying Teague framework).
A new substantive rule of constitutional law is either retroactive on collateral review or it is not. Indeed, Justice Harlan, whose views on retroactivity the Supreme Court adopted in Teague and its progeny, criticized the notion that courts could make constitutional rules partially retroactive or partially prospective on a ease by case basis. See Mackey v. United States, 401 U.S. 667, 677, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in judgments in part and dissenting in part) (“What emerges from today’s decisions is that in the realm of constitutional adjudication in the criminal field the Court is free to act, in effect, like a legislature, making its new constitutional rules wholly or partially retroactive or only prospective as it deems wise. I completely disagree with this point of view.”). And that criticism was one of the reasons that led to the Teague retroactivity framework. See Teag-ue, 489 U.S. at 310,109 S.Ct. 1060.
6. The Griffin panel also concluded that Johnson cannot be retroactive as applied to the mandatory Guidelines because its vagueness rule is procedural rather than substantive as applied to the mandatory Guidelines. That too is mistaken.
First, even if we put Booker aside, there is no logical basis for treating the residual clause of the mandatory career offender guideline differently from the residual clause of the ACCA. Griffin sought to distinguish the mandatory Guidelines from the ACCA by asserting that Johnson “would not alter the statutory boundaries for sentencing set by Congress for the crime,” and by emphasizing that the Guidelines merely “produce changes in how the sentencing procedural process is to be conducted.” Griffin, 823 F.3d at 1355, 2016 WL 3002293, at *5. But the mandatory Guidelines definitively did alter the substantive boundaries for sentencing, requiring in effect statutory minimum and maximum penalties for most cases. See Wright, 607 F.3d at 718-19 (William Pryor, J., joined by Fay, J., concurring) (“Because Congress required sentencing courts to apply the Sentencing Guidelines and impose a sentence within the applicable guidelines range, it was reasonable to view the Guidelines as effectively setting minimum and maximum penalties that varied based on the circumstances of the offense and the characteristics of the offender.”). Griffin erred in concluding that the mandatory guidelines were procedural and not substantive, for retroactivity purposes.
Second, in Montgomery v. Louisiana, — U.S.-, 136 S.Ct. 718, 733-34, 193 L.Ed.2d 599 (2016) — which held that Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) established a new substantive constitutional rule that was retroactive on collateral review — the Supreme Court acknowledged that under Miller some juvenile offenders convicted of murder could still receive a sentence of life without parole upon resentencing. This fact did not, however, make the Miller rule procedural or otherwise take it outside the realm of retroactively-applicable substantive rules: “Louisiana contends that because Miller requires [a] process, it must *1341 have set forth a procedural rule. This argument, however, conflates a procedural requirement necessary to implement á substantive guarantee with a rule that ‘regulates only the manner of determining the defendant’s culpability.’ ” Montgomery, 136 S.Ct. at 734-35 (quoting Schriro v. Summerlin, 542 U.S. 348, 353, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004)). Put differently, contrary to the Griffin panel’s conclusion, the fact that the residual clause of the mandatory career offender guideline may in some ways implicate the process by which a district court imposes a sentence does not negate the fact that it also “fixes sentences,” just as the residual clause of the ACCA does. Vagueness principles therefore apply to both. See Johnson, 135 S.Ct. at 2557.
7. In closing, we note that several of our sister circuits have concluded that Johnson applies to the residual clause of the career offender guideline. See United States v. Madrid, 805 F.3d 1204, 1211 (10th Cir. 2015); United States v. Pawlak, 822 F.3d 902, 905-07, 2016 WL 2802723, at *3-4 (6th Cir. May 13, 2016); United States v. Townsend, 638 Fed.Appx. 172, 177-78 (3rd Cir.2015); United States v. Welch, No. 12-4402-CR L, 641 Fed.Appx. 37, 42-43, 2016 WL 536656, at *4 (2d Cir. Feb. 11, 2016). Other circuits have either questioned whether the residual clause of the career offender guideline remains constitutional after Johnson or have acted on the assumption or concession that Johnson applies. See Ramirez v. United States, 799 F.3d 845, 856 (7th Cir. 2015) (acting on the assumption that the Supreme Court’s reasoning in Johnson applies to the residual clause of the career offender guideline); United States v. Soto-Rivera, 811 F.3d 53, 59 (1st Cir. 2016) (conducting a career offender analysis without relying on the residual clause because the government had conceded that Johnson applied to the Guidelines).
The Fifth and Eighth Circuits have recently denied applications for leave to file second or successive motions to vacate in cases where the claim was that Johnson affected the residual clause of the advisory career offender guideline. See In re Arnick, 826 F.3d 787, 788-89, 2016 WL 3383487, at *1 (5th Cir. June 17, 2016); Donnell v. United States, 826 F.3d 1014, 1017, 2016 WL 3383831, at *3 (8th Cir. June 20, 2016). But as far as we can tell no other circuit has held that the residual clause of the mandatory career offender guideline is categorically immune from a Johnson challenge.
With these thoughts, we concur in the denial of Mr. Sapp’s application.