**IN RE: Kiwanis JONES, Petitioner.**

**No. 16–14053–J**

United States Court of Appeals, Eleventh Circuit.

Date Filed: 07/27/2016

---

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

BY THE PANEL:

Pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A), Kiwanis Jones has filed an application seeking an order authorizing the district court to consider a second or successive motion to vacate, set aside, or correct his federal sentence, 28 U.S.C. § 2255. Such authorization may be granted only if this Court certifies that the second or successive motion contains a claim involving:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." *Id.* § 2244(b)(3)(C); *see also Jordan v. Sec'y, Dep't of Corrs.*, 485 F.3d 1351, 1357–58 (11th Cir. 2007) (explaining that this Court's determination that an applicant has made a *prima facie* showing that the statutory criteria have been met is simply a threshold determination).

In his counseled application, Jones indicates that he wishes to raise one claim in a second or successive § 2255 motion. Jones asserts that his claim relies upon a new rule of constitutional law, and he cites *Johnson v. United States*, 576 U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), in which the United States Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA") is unconstitutionally vague, and *Welch v. United States*, 578 U.S. ——, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016), in which the Supreme Court held that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review. Jones asserts that his sentence, enhanced as a career offender under the residual clause of the Sentencing Guidelines, violates due process. Jones argues that his prior conviction for third-degree escape is no longer a predicate offense under the Guidelines because the residual clause is invalid in light of *Johnson.*

On June 10, 2016, Jones filed an application seeking leave to raise two claims, one of which was a nearly identical *Johnson-based* challenge to his status as a career offender. On July 7, 2016, we denied the application, in relevant part, because the Sentencing Guidelines—whether advisory or mandatory—cannot be unconstitutionally vague.

Under 28 U.S.C. § 2244(b)(1), "[a] claim presented in a second or successive habeas corpus application under [28 U.S.C] section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1). We have held that § 2244(b)(1)'s mandate applies to applications for leave to file a second or successive § 2255 motion. *In re Baptiste*, No. 16–13959, 828 F.3d 1337, 1339–40, 2016 WL 3752118 (11th Cir. July 13, 2016). We also have held that a prisoner may not file "what amounts to a motion for reconsideration under the guise of a separate and purportedly 'new' application" when the new application raises the same claim that was raised and rejected in the prior application. *Id.*, 828 F.3d at 1340. Thus, we reject Jones's application because the claim in his instant application was raised and rejected on the merits in a prior application. *See id.*, 828 F.3d at 1339–41. Accordingly, Jones's application for leave to file a second or successive motion to vacate is hereby DENIED.

ROSENBAUM and JILL PRYOR, Circuit Judges, concurring in result:

To err is human; to forgive, divine;[1] but to correct? Well … after *In re Baptiste*, No. 16–13959, 828 F.3d 1337, 2016 WL 3752118 (11th Cir. July 13, 2016), that's not something we do in this Circuit, when it comes to wrongly denied inmates' requests for authorization to file a second or successive habeas petition. So some inmates with sentences unconstitutionally enhanced under the Armed Career Criminal Act may sit in prison for years beyond their constitutionally authorized sentences. Though we deeply respect our colleagues, we think this is just wrong.

*Baptiste's* reasoning cannot survive scrutiny for four reasons.

First, *Baptiste's* analysis of the 28 U.S.C. § 2244's plain language is demonstrably incorrect. Contrary to *Baptiste's* conclusion, nothing in the statutory text of § 2244 requires—or even speaks to—the dismissal of successive requests for authorization to file a second or successive habeas petition.

Second, policy considerations do not, as *Baptiste* asserts, support the dismissal of successive requests to file a second or successive habeas petition, particularly one based on *Johnson v. United States*, 576 U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). In fact, policy—and more significantly, constitutional—considerations require us to have the ability to grant a successive request for authorization when we know that we incorrectly denied an initial request raising the same claim.

Third, *Baptiste* mistakenly concludes that the law-of-the-case doctrine necessarily precludes our entertaining of a successive request for authorization raising the same claim as a previously denied request for authorization. But actually, the law-of-the case doctrine is precisely what allows us to consider a meritorious second or successive request for authorization raising the same claim as a previously denied request for authorization. And that doctrine has the added benefit of addressing *Baptiste's* concerns about stemming abusive refilings of requests for authorization.

Finally, the exception *Baptiste* creates to its own rule betrays its flaws. While *Baptiste* holds that successive requests for authorization raising the same claim must be dismissed, it nonetheless allows an unexplained and unwritten exception where, in *Baptiste's* view, the initial request for authorization was denied on a basis other than the merits. That exception

---

1. Alexander Pope, "Essay on Criticism," Part 2 (reprinted at http://www.poetryfoundation. org/resources/learning/essays/detail/69379 (last visited July 15, 2016).

could not exist, however, if, as *Baptiste* asserts, the statutory text of § 2244 and the law-of-the-case doctrine necessarily precluded successive requests for authorization. In short, *Baptiste* collapses under its own weight.

## I.

We begin our analysis where we usually end as well: with the statutory text. *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379, (1992). Where statutory language is clear, we must follow it in all but the "most extraordinary circumstance." *Id.* Here, 28 U.S.C. § 2244 unambiguously does not foreclose us from considering a second request for authorization that raises the same claim as a previously denied first request.

*Baptiste* suggests that § 2244(b)(1), by its language, prohibits the filing of a successive request for authorization to file a second or successive habeas petition. But it does so based on a mistaken understanding of the terms of § 2244(b)(1). Once we understand the meanings of the terms that § 2244(b)(1) employs, it becomes clear that that section does not preclude the filing of a successive request for authorization.

Section 2244(b)(1) instructs that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." Section 2254, in turn, provides a mechanism by which inmates in state custody may seek habeas corpus relief.

On first glance, it may appear that this language precludes the filing of a successive request for authorization to file a second or successive habeas petition if we have previously denied another request for authorization raising the same claim. But in fact it does not. As relevant here, § 2244 and § 2254 employ two important terms: "application" and "motion." In these sections, "application" refers to a substantive application (sometimes called a motion by courts and litigants) for a writ of habeas corpus, usually filed in a district court. *See id.* § 2244(b)(3)(A). Section 2244(b)(3)(A) requires that a petitioner who desires to file a second or successive such "application" in district court first "move" a court of appeals for authorization to do so. The type of motion that § 2244(b)(3)(A) refers to is not the substantive "application" for a writ of habeas corpus; instead, it is the preliminary filing an inmate makes with the court of appeals seeking permission to file a second or successive substantive "application" for a writ of habeas corpus. Only if the court of appeals grants the "motion" for authorization to file a second or successive "application" may the petitioner file the second or successive substantive "application" in a district court. *Id.* § 2244(b)(3)(B).

The term "application" as used in § 2244(b)(1) clearly means the same thing it means in the rest of § 2244—the actual substantive habeas petition filed in the district court. *In re Williams*, 364 F.3d 235, 242 (4th Cir. 2004). By contrast, "motion" in that section consistently refers to the request for authorization to file a second or successive habeas petition, which is filed in the circuit court. We generally construe a single term that appears more than once in the same statute the same way. *Envt'l Def. v. Duke Energy Corp.*, 549 U.S. 561, 574, 127 S.Ct. 1423, 1432, 167 L.Ed.2d 295 (2007).

Our Court, however, has assumed the habit of referring to requests for authorization and habeas petitions by exactly the opposite terminology that § 2244 employs. So we regularly call a request to file a second or successive habeas petition an "application," and we refer to a habeas petition as a "motion." *See, e.g., Baptiste*, 828 F.3d at 1338 ("Gary Baptiste has filed

a counseled *application* seeking an order authorizing the district court to consider a second or successive *motion* to vacate, set aside, or correct his federal sentence.")[2] (emphasis added). As a result, a person using Eleventh Circuit terminology to construe § 2244 could come away with the mistaken impression that § 2244(b)(1) precludes the filing of a second request for authorization to file a second or successive habeas petition if the filer raises the same claim that he raised in an earlier request for authorization. To be sure, that interpretation would be wrong.

So, in the interests of clarity, in this concurrence, we use the terms "habeas petition" for "application" and "request for authorization," or "RFA," for the "motion" to which § 2244(b)(1) refers.

Once we understand the terminology that § 2244(b)(1) employs, the statute's prohibitions become clear: § 2244(b)(1) mandates dismissal on a second or successive RFA of only those claims presented in a prior substantive habeas petition ("[a] claim presented in a second or successive habeas corpus application [habeas petition] under section 2254 that was presented in a prior application [habeas petition] shall be dismissed.").

But § 2244(b)(1)'s command does not "appl[y] with equal force," as *Baptiste* holds, No. 16–13959, 828 F.3d at 1339 to RFAs—as opposed to substantive habeas petitions—filed under § 2254 or under § 2255. Indeed, had the drafters so intended, they could have—and, we expect, would have—written it that way. "We do

not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest." *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 341, 125 S.Ct. 694, 700, 160 L.Ed.2d 708 (2005). Congress could have provided that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application *or motion under this section* shall be dismissed." Tellingly, it didn't. *See Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation and modification omitted)). So we may not create the requirement ourselves.

Notwithstanding the plain meaning of § 2244(b)(1), *Baptiste* reads it to "require[ ] us to dismiss a claim that has been presented in a prior [RFA]." No. 16–13959, 828 F.3d at 1339.[3] And it does so without engaging in any statutory interpretation. Instead, *Baptiste* merely adopts the antitextual holding from *Bennett v. United States*, 119 F.3d 470, 470–71 (7th Cir. 1997). But even the Seventh Circuit recognized that its holding in *Bennett* defied the

---

**2.** We do not mean to suggest that the use of the term "motion" to refer to a substantive habeas petition for relief under § 2255 is incorrect: § 2255 itself uses that terminology. But § 2244 refers to a different type of motion, one to request authorization to file.

**3.** In holding that a successive RFA based on the same claim as an initial RFA must be

dismissed, *Baptiste* made the more general observation that § 2244(b)(1), which expressly applies to only substantive habeas petitions filed under § 2254, also applies to substantive habeas petitions under § 2255. No. 16–13959, 828 F.3d at 1339. Even assuming this is true, for the reasons set forth above we do not believe the text of § 2244(b)(1) supports *Baptiste*'s holding.

"literal[ ]" and "more natural[ ]" reading of the statutory language. 119 F.3d at 471.

So *Bennett* premised its holding on purely a policy concern—and specifically a policy concern upon which *Baptiste* does not rely.[4] But nothing in *Bennett* supports *Baptiste*'s reliance on it to foreclose the "literal[ ]" and "more natural[ ]" reading of § 2244(b)(1). And despite *Baptiste*'s suggestion that its path had already been blazed by "our sister circuits," *Baptiste* cites no published order or opinion other than *Bennett* that shares its holding.[5]

Nor are we alone in respectfully disagreeing with *Bennett*'s decision to defy what it acknowledged was the plain meaning of § 2244(b)(1). The Fourth Circuit has also found *Bennett*'s express disavowal of § 2244(b)(1)'s plain meaning befuddling. *In re Williams*, 364 F.3d at 241–42.

Quite simply, nothing in the language of the relevant habeas statutes requires us to dismiss an RFA that raises the same claim that was presented (and rejected) in a prior RFA. Rather, the plain language of the text of § 2244(b)(1) does not prohibit us from entertaining such an RFA.

## II.

Nor do policy concerns justify precluding the filing of successive RFAs where an initial RFA raising the same claim has been denied. *Baptiste* hangs its policy concerns on § 2244(b)(3)(E), which, in *Baptiste*'s view, "provides a second, alternative basis for denying Baptiste's [successive RFA]" because Baptiste was "essentially asking [the panel] to reconsider [its] previous order." 828 F.3d at 1340, 2016 WL 3752118, at *2. And, since § 2244(b)(3)(E) does not allow for rehearing or appeal from denials of RFAs, *Baptiste* reasons, allowing the filing of a successive RFA on a claim for which a previous RFA was denied somehow circumvents § 2244(b)(3)(E)'s prohibitions. We respectfully disagree.

Initially, we note that nothing in the language of § 2244(b)(3)(E) requires the conclusion that *Baptiste* draws. While

---

4. Specifically, *Bennett* identified the following policy consideration: avoiding a situation in which RFA applicants "whose previous [RFA] had had enough colorable merit to be granted would be treated worse than those [RFA] applicants whose previous [RFA] application had been denied because of the obvious lack of merit of the motion or petition sought to be filed." We respectfully disagree that that would be the outcome of allowing the filing of a successive RFA raising the same claim as a previously denied RFA. First, we do not agree that allowing an individual whose first RFA has been denied to file a second RFA raising the same claim is somehow unfair to a petitioner whose first RFA has been granted, but who has lost on his subsequent substantive habeas petition. For starters, the petitioner whose RFA was initially granted will have had the opportunity to have his claim thoroughly explored and resolved on the merits. But the individual whose initial RFA was rejected will not. Granting the second RFA does no more than provide the second individual with the opportunity to have his claim fully

considered on the merits. And if, after full consideration a court concludes that a claim is truly without merit, the claim will be denied, whether filed by the first or second person in our example. We see no unfairness in that. Second, the petitioner whose habeas petition has been denied on the merits has the ability to appeal and to have a second or even a third court to evaluate the correctness of the denial. But without the opportunity to bring a second RFA on the same claim, the second individual, whose RFA was initially wrongly denied, has no ability to have the mistake corrected by anyone. Allowing a second RFA on the same claim, under appropriate circumstances, addresses that problem.

5. The only other case *Baptiste* cites in direct support of its holding is *United States v. Card*, 220 Fed.Appx. 847 (10th Cir. 2007), an unpublished decision that does not analyze the statutory language at all and instead simply applies it to preclude the filing of a second RFA raising the same claim as an earlier RFA.

§ 2244(b)(3)(E) prohibits certain avenues of appeal, significantly, it does not expressly prohibit filings like successive RFAs. Instead, § 2244(b)(3)(E) provides only that "[t]he grant or denial of an authorization by a court of appeals to file a second or successive application [habeas petition] shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." A successive RFA is none of these things. And we would not presume that Congress intended to bar successive RFAs in the absence of such a provision in the statutory text. Plus, such a construction of § 2244(b)(3)(E) would be inconsistent with § 2244(b)(1), which, as we have explained, does not mandate dismissal of successive RFAs.

So it is not surprising that *Baptiste* cites no authority for the proposition that § 2244(b)(3)(E) bars an RFA asserting the same claim as a prior one. Nor did either the Seventh Circuit in *Bennett* or the Fourth Circuit in *Williams* attempt to rely on this argument to support or qualify their respective holdings.

Our experience with *Johnson-based* RFAs illustrates why Congress would not have precluded and did not preclude, by the language of § 2244(b)(3)(E), the filing of a successive RFA on the same claim that was denied in a previous RFA. In circumstances like those following the issuance of *Johnson*, precluding successive RFAs may well interfere with the ability to grant effective habeas relief, in violation of the Suspension Clause. *See generally Felker v. Turpin*, 518 U.S. 651, 667, 116 S.Ct. 2333, 2341–42, 135 L.Ed.2d 827 (1996) (Souter, J., concurring). More specifically, an inmate whose initial RFA was demonstrably wrongly denied would have no re-course to allow his meritorious claim to be heard.[6]

Under the current circumstances, where the law is quickly developing and each of us literally can issue over a hundred orders on *Johnson* RFAs in a week—on top of our regular responsibilities—the need for a safety valve that can allow for the correction of errors is more pressing now than ever. We should not be surprised that in considering requests for authorization to file second or successive habeas petitions, errors sometimes occur. Our colleagues all work extremely hard. The Eleventh Circuit regularly is among the federal appellate courts with the highest caseload per judge in the country. Last year, eleven of us, sitting in three-judge panels and with the deeply appreciated assistance of our colleagues around the country on a limited number of cases, handled about 6,115 filings. This year, our *non*-Johnson caseload has not noticeably decreased. But along with our regular workload, in the three months alone since *Welch* issued, we have also received more than 1,800 *Johnson-based* requests for authorization. We recite these facts not to complain about our workload—we are honored to have the privilege of serving. But knowledge of our workload is essential to understanding how mistakes can sometimes happen.

The potential for error is all the greater because we have little to go on and are instructed to perform a very limited function in the request-for-authorization stage. Inmates who file their requests *pro se*—and many do—almost universally lack experience in the practice of law. They are directed to use a particular form to make their request, a form that is not especially conducive to eliciting detailed information about the inmate's earlier proceedings. In-

---

**6.** *Baptiste* addresses this concern by asserting that we may *sua sponte* discover the error and decide of our own volition to correct it. As explained later in this concurrence, however, that theoretical remedy, despite our colleagues' good intentions, is, in reality, no remedy at all.

deed, in seeking the facts supporting an inmate's request, the form instructs, "[T]ell your story briefly without citing cases or law." In most cases, based on this form alone, and without any briefing, we must grant or deny a request within thirty days, even though the result potentially is life-altering for the inmate. 28 U.S.C. § 2244(b)(3)(D). As this timeframe and the structure of 28 U.S.C. § 2244 make clear, Congress designed our function as one of gate-keeping only; we are not to conduct extensive merits-based analyses, and, in fact, in most cases, it is simply not possible to do so. Full-blown merits-based analysis occurs in the district court and only if and after we grant a request for authorization and the inmate files a substantive habeas petition. Despite our best efforts, the nature of the gate-keeping role and process—particularly under the crush of hundreds of *Johnson* requests—lends itself to the making of at least an occasional mistake.

The stakes in deciding these requests are huge. If we wrongly deny a request, an inmate whose constitutionally authorized sentence is limited to ten years may sit in prison for fifteen, twenty, or even more years. So getting it right is extremely important. This is particularly true in view of the consequences of our errors: inmates will potentially remain locked in prison under unconstitutional sentences for many years.

Nor, contrary to *Baptiste*'s suggestion, can our *sua sponte* authority to reconsider wrongly decided orders save § 2244 from unconstitutionally interfering with the availability of effective habeas relief, in violation of the Suspension Clause. Between April 18, 2016, and July 15, 2016, this Court received 1,826 *Johnson-based* RFAs. Of those, we have denied hundreds. We know that some applications erroneously were denied, although we do not know how many. *Baptiste* tries to reassure prospective petitioners that this Court can still correct its mistakes *sua sponte.* Though well intentioned, this gesture seems in practical respects hollow. *Baptiste* stops short of directing anyone at the Court to review all RFAs that we have denied in order to identify those which, but for our error, we should have granted. Nor does *Baptiste* offer any other suggestions for accomplishing this arduous task.

As far as we can tell, as a practical matter, the *sua sponte* solution can work on a large-scale basis only if, after we receive and dismiss under *Baptiste* an inmate's successive RFA identifying our error in our order denying his first RFA, we can then *sua sponte* review our first order. Perhaps this is what *Baptiste* intended. But if it did, we wonder why we must first go through the exercise of dismissing the successive RFA before we can correct our error.

And if *Baptiste* did not intend this result, it seems to us that *Baptiste's* reassurance that its expansive reading of § 2244(b)(3)(E) "does not place our orders 'beyond all review,' " is simply wrong.

### III.

Significantly, the fact that § 2244(b)(1) and (b)(3)(E) do not prohibit the filings of successive RFAs does not mean that we must sit idly by if an inmate abuses the process by filing multiple unmeritorious RFAs raising the same claim. Instead, to the extent *Baptiste*'s policy concern is grounded in a desire to avoid having to consider such repetitious RFAs, the law-of-the-case doctrine already protects against that peril.

Under the law-of-the-case doctrine, "an appellate decision binds all subsequent proceedings in the same case," in order to "create efficiency, finality[,] and obedience within the judicial system." *United States v. Amedeo*, 487 F.3d 823, 829 (11th Cir. 2007) (quotation and modification omitted).

Courts may readily dispose of repetitive, meritless RFAs that present the same claim already denied in a prior RFA by applying the law of the case where appropriate, as *Baptiste* itself recognized.

Under the law-of-the-case doctrine, a court may issue decisions in conflict with its prior rulings in the case only "where (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior appellate decision was clearly erroneous and would work manifest injustice." *In re Lambrix*, 776 F.3d 789, 793–94 (11th Cir. 2015) (quotation omitted). So unless a successive RFA meets at least one of these high standards, we can and should use the law-of-the-case doctrine to dispose of it.

But we must leave ourselves the outlet for correcting our mistakes that the law-of-the-case doctrine anticipates. In considering meritorious successive RFAs, most often, at least the third exception, and possibly the second, would authorize the issuance of a favorable order in a case where we had previously issued an unfavorable order on the same claim. So when we are satisfied that we clearly erred in denying an RFA—either because of an unforced error in the first round or because subsequent controlling authority shows that our earlier analysis was incorrect—the law-of-the-case doctrine allows us to correct our mistakes in those limited circumstances.

As for manifest injustice, the *Johnson* circumstances satisfy it as well. In the context of *Johnson* RFAs, an error means that an inmate may potentially sit in prison for years beyond his constitutionally authorized sentence.

For these reasons, we respectfully disagree with *Baptiste* that we may not consider clearly meritorious successive RFAs and instead must doom federal inmates potentially to sit in prison for years beyond their constitutionally authorized sentences, all based on incorrect orders we issued under abbreviated gate-keeping proceedings.

## IV.

Finally, *Baptiste* carves out an exception to its own draconian rule that successive RFAs that raise the same claim that was denied in a prior RFA must be dismissed. As *Baptiste* explains its exception, its holding does not apply to successive RFAs where we previously denied an inmate's earlier RFA raising the same claim on a basis other than the merits. But *Baptiste*'s exception proves too much: in order for such an exception to be able to exist, the statutory text cannot preclude the filing of successive RFAs raising the same claim as an inmate's previously denied RFA, and the law-of-the-case doctrine necessarily must authorize such filings.

*Baptiste* provides that we may entertain an inmate's successive RFA where we previously denied an RFA raising the same claim but we did so on a basis other than the merits.[7] We hypothesize that our well-intentioned colleagues created this exception to deal with a problem that, if not addressed, would surely doom § 2244(b)(1) and (b)(3)(E) as a violation of the Suspension Clause: without the exception, inmates whose *Johnson* claims we wrongly denied before the Supreme Court issued *Welch v. United States*, 578 U.S. ——, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016), would have

---

**7.** Our colleague Judge Wilson has opined that "it is well-established that when a prisoner [files an RFA], he does not seek for us to adjudicate the merits of the arguments set forth in his request." *In re: Cook*, No. 16-13830, manuscript op. at 13 (Wilson, J., dissenting) (citing *Boyd v. United States,* 754 F.3d 1298, 1301 (11th Cir.2016)). We agree. We merely fulfill a gatekeeping function; the merits are for the district court to determine if we authorize the filing of a successive substantive habeas petition.

no recourse for addressing a sentence that was unconstitutionally enhanced under ACCA's now-invalid residual clause and would sit in prison under unconstitutional sentences without the possibility of relief.

Under *Dodd v. United States*, 545 U.S. 353, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005), an inmate has one year to petition for relief, from the date that the Supreme Court initially recognized a right, not from the date the Supreme Court held the right to be retroactively applicable. For roughly ten months—between June 26, 2015, when the Supreme Court announced a new rule in *Johnson*, and April 18, 2016, when the Supreme Court held in *Welch v. United States*, 578 U.S. ——, 136 S.Ct. 1257, that *Johnson*'s rule was retroactively applicable to cases on collateral review—we denied nearly all requests for authorization premised on *Johnson*.[8] We did so, in large part, because we mistakenly believed that *Johnson* was not retroactively applicable. *See, e.g., In re Rivero*, 797 F.3d 986 (11th Cir. 2015). And we did so in many of these cases without even purporting to rule that the denial was without prejudice.[9] *See, e.g., id.* If § 2244(b)(1) and (b)(3)(E) prohibited the filing of all successive RFAs, none of these mistakes could be corrected.

So, we believe for this reason, *Baptiste* created an exception to the missing language that it read into the statute: under *Baptiste*, an inmate may file a successive RFA raising the same claim that we denied in his first RFA, if we denied the claim on a basis other than the merits.

But if the language in § 2244(b)(3)(E) that prohibits the filing of appeals, peti-

tions for rehearing, and writs of certiorari, in fact, applies to RFAs, as *Baptiste* contends it does, it necessarily applies to all successive RFAs, not just those denied on a non-merits basis, since nothing in the statutory language purports to exempt any filings—including RFAs—that are denied on a basis other than the merits, from the constraints of the statute's prohibitions. Rather, § 2244(b)(3)(E)'s prohibitions are absolute: they apply without exception to preclude all appeals, petitions for rehearing, and writs of certiorari. So necessarily, if they apply to RFAs, they must prohibit all successive RFAs, whether the initial RFA was denied on the merits or not.

And if § 2244(b)(3)(E)'s prohibitions do not apply to that subset of successive RFAs that was denied on a non-merits basis, even though they apply to all other successive RFAs, where does that authority come from? Section 2244(b)(3)(E) does not allow non-merits-based appeals, petitions for rehearing, or writs of certiorari. *Baptiste* identifies no basis for its selectively applicable construction of the statute, which creates its own "loophole," *Baptiste*, 828 F.3d at 1340, from § 2244(b)(3)(E). And in creating this loophole, *Baptiste* ignores the actual statutory language of § 2244(b)(3)(E) as it has construed it to preclude successive RFAs raising claims that we denied on the merits of a previous RFA.

Not only does the *Baptiste* exception conflict with *Baptiste*'s own statutory construction of § 2244(b)(3)(E) to establish its non-merits-based exception, but the *Baptiste* exception runs contrary to *Baptiste*'s

---

8. For a brief period, we held a few requests in abeyance, pending the Supreme Court's decision in *Welch. See In re Anthony Johnson,* 814 F.3d 1259 (11th Cir. 2016). Less than two weeks after *Anthony Johnson* issued, however, we vacated it and continued denying requests for authorization. *See In re Anthony Johnson,* 815 F.3d 733 (11th Cir. 2016).

9. Whether the denial of an RFA could even be "without prejudice," in light of *Baptiste*'s construction of § 2255(b)(3)(E)'s prohibitions to apply to successive RFAs, in itself, is questionable.

conclusion that the law-of-the-case doctrine prohibits the filing of a successive RFA where we have denied a previous RFA raising the same claim. Indeed, the *Baptiste* exception can exist only if the law-of-the-case doctrine permits its application.

The law-of-the-case doctrine applies with equal force to merits and non-merits-based decisions in a case. *See, e.g., United States v. Jordan*, 429 F.3d 1032, 1035–36 (11th Cir. 2005). So for the *Baptiste* exception to exist, the law-of-the-case doctrine must necessarily allow for it. And of course, it does. Incorrect non-merits denials such as those that we decided before the Supreme Court issued *Welch* represent exceptions to the law-of-the-case doctrine because "controlling authority has since made a contrary decision of law applicable to that issue, or . . . the prior appellate decision was clearly erroneous and would work manifest injustice." *In re Lambrix*, 776 F.3d 789, 793–94 (11th Cir. 2015) (quotation omitted).

But once again, if the law-of-the-case doctrine allows for the *Baptiste* exception, why does it not permit successive RFAs to be filed where we incorrectly denied an initial RFA on the same claim, on the merits? Again, *Baptiste* offers no answers. Nor can we think of any that apply on a categorical basis.

## V.

Although we would not be able to grant Jones's successive RFA even in the absence of *Baptiste*,[10] in a number of our cases, *Baptiste* stands between an inmate's possible release and years of imprisonment under an unconstitutional sentence. For example, in ACCA cases where we denied initial RFAs before we issued *In re Rogers*, No. 16–12626, 825 F.3d 1335, 2016 WL 3362057 (11th Cir. June 17, 2016), our court rejected RFAs by substituting, in some cases, convictions that the PSI never noted as a potential predicate ACCA conviction and the district court never considered at sentencing, so the defendant may have had no reason to challenge. Our Court also wrongly decided on the fly whether certain of these and other substitute convictions qualified under either the enumerated crimes or elements clauses. We did this without briefing and under a 30-day deadline, with the crush of other work, and before cases such as *Mathis v. United States*, ––– U.S. ––––, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016), were decided. We were wrong about some of these determinations. Under *Rogers*, these mistakes would not have occurred. That's because under *Rogers* we are limited to examining the convictions the sentencing court actually relied upon as predicates and then determining whether we previously have held those convictions to qualify categorically as such or whether the sentencing court otherwise made an express finding that binds us.

## VI.

Arnold Bennett said that "[a]ll wrong doing is done in the sincere belief that it is the best thing to do." We do not doubt our colleagues' intentions in issuing *Baptiste*. But their good intentions do not make their conclusions in that case, in our view, any less wrong.

---

10. Our holdings in *United States v. Matchett*, 802 F.3d 1185 (11th Cir. 2015), and *In re Griffin*, No. 16–12012, 823 F.3d 1350, 2016 WL 3002293 (11th Cir. May 25, 2016) which we continue to believe are incorrect, *see In re Clayton*, No. 16–14556, 829 F.3d 1254, 1267, 2016 WL 3878156, *10 (11th Cir. July 18, 2016) (Rosenbaum, J., concurring); *id.* at 1270–71, 2016 WL 3878156, at *13 (Jill Pryor, J., concurring in result), still bind us and would preclude us from granting Mr. Jones's current RFA.