[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-15555

————————————————

D.C. Docket Nos. 2:14-cv-01256-WKW-TFM; 2:09-cr-00113-WKW-TFM-2

JAMES STEINER,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Alabama

————————————————

(October 16, 2019)

Before WILSON and NEWSOM, Circuit Judges, and PROCTOR,* District Judge.

PER CURIAM:

---

* Honorable R. David Proctor, United States District Judge for the Northern District of Alabama, sitting by designation.

James Steiner appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate, challenging his conviction for aiding and abetting the offense of using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c).  Steiner first argues that the district court erred by denying his motion because the government did not present sufficient evidence at trial that he had advance knowledge his co-conspirators would use or carry a firearm during the underlying crime of violence, as required by *Rosemond v. United States*.  *See* 572 U.S. 65, 67 (2014).  We have not yet addressed whether *Rosemond* applies retroactively to cases on collateral review.  We hold today that it does.  Nonetheless, we conclude that Steiner is not entitled to relief under *Rosemond* because the evidence at trial was sufficient for a reasonable jury to infer that he had advance knowledge his co-conspirators would use or carry firearms during the underlying crime of violence.

Steiner also argues that his conviction is unconstitutional because the underlying crime of violence—aiding and abetting a carjacking—no longer qualifies as a crime of violence after *United States v. Davis*, 588 U.S. ___, 139 S. Ct. 2319, 2336 (2019) (holding that the residual clause in § 924(c)(3)(B) is unconstitutionally vague).  However, our prior precedent demonstrates that aiding and abetting a carjacking qualifies as a crime of violence under the elements clause of § 924(c)(3)(A).  Therefore, *Davis* does not affect Steiner's § 924(c) conviction.

2

Steiner further argues that the district court erred by denying his claim that counsel was ineffective for failing to object to the jury charge, which lacked an instruction on advance knowledge. But because advance knowledge was not a requirement of a conviction for aiding and abetting a § 924(c) offense at the time of Steiner's trial, we conclude that counsel was not ineffective for failing to make such an objection.

Finally, Steiner asserts that the district court failed to grant or deny a certificate of appealability (COA) regarding his claim that the jury instructions themselves were erroneous under *Rosemond*. He asks us to remand this matter to the district court for the limited purpose of ruling on that issue. We decline to do so because the district court's order regarding a COA effectively denied a COA regarding Steiner's jury-instruction claim.

## I. Background

A grand jury charged Steiner and one of his co-conspirators, Wayne Ware, with (1) conspiracy to commit carjacking, in violation of 18 U.S.C. § 371; (2) aiding and abetting carjacking, in violation of 18 U.S.C. §§ 2 and 2119; and (3) aiding and abetting the crime of using or carrying a firearm during and in relation to a crime of violence—here, aiding and abetting a carjacking—in violation of §§ 2 and 924(c)(1)(A). According to the indictment, Steiner and Ware committed the carjacking with two other young men, Torie Wilson and Jihad

3

Walker.  Steiner and Ware were tried together in the Middle District of Alabama in 2009.

At trial, the testimony of Walker and two victims established the following.[1] Steiner, Walker, Wilson, and Ware met up on the evening of the carjacking.  At some point that evening, Ware suggested they "go hit a lick," which Walker understood to mean "go try to get some money" by robbing someone.  No one objected to Ware's suggestion.  Instead, the group got into Walker's Chevy Blazer and drove off in search of a target.  Before they left, Walker saw Ware load two firearms into the vehicle—a pistol and an AK-47.  Ware did not attempt to conceal the guns from the others.  But, importantly, there was no evidence presented at trial that Steiner observed Ware loading the guns into the car.  When they left, Steiner drove, Walker sat in the front passenger seat, and Wilson and Ware sat in the backseat.

That same evening, Megan Patterson was driving around in her Chevy Impala with three friends, Melissa Nolan, S.H., and S.R.[2]  Around 11:30 p.m., they stopped briefly at a gas station to purchase some items. When they left, Patterson was driving, Nolan was in the front passenger seat, and S.H. and S.R. were in the

---

[1] Walker pled guilty to carjacking and testified at Steiner and Ware's trial pursuant to his plea agreement.

[2]  S.H. and S.R. were minors at the time of the carjacking and are referred to by their initials.

back seat.  Unfortunately for Patterson and her friends, Steiner and his co-conspirators had arrived at the same gas station, observed Patterson and her companions, and decided to target them.  Steiner followed Patterson's Impala as it left the gas station.

Shortly thereafter, Steiner drove up very fast behind the Impala with his bright lights on, passed the Impala, pulled in front of it, and slammed on the brakes.  Patterson was unable to stop in time and hit the Blazer.  Steiner, Walker, Wilson, and Ware got out of the Blazer and began approaching the Impala.  Wilson and Ware brandished the guns and began firing them.[3]

Patterson observed that one gun was a pistol and one was a "long gun" with a "banana clip."  She immediately ducked, reversed her car into a ditch, and hit a tree.  S.H. and S.R. managed to get out of the car and escape into the woods.  But Patterson did not get out of the car for fear of being shot, and Nolan could not get out of the car because her door was blocked.

Steiner and his co-conspirators approached the Impala and demanded Patterson's and Nolan's money and purses.  Patterson and Nolan handed the items over.  The four men then returned to the Blazer, only to discover it would not start.  Patterson and Nolan saw the four men talking amongst themselves.  Meanwhile,

---

[3] Patterson testified that she believed the men were shooting at her.  But no one was struck by a bullet, and no bullet holes were found in the Impala.  Walker testified that Wilson and Ware fired the guns at the treetops, not the victims.

Nolan called her mom, but the call was cut short when Steiner and the others returned a few moments later and asked Patterson and Nolan for their cell phones and keys. One of the men told Patterson to get out of the car and tried to drive the Impala out of the ditch, but it was stuck. Someone then told Patterson to get back in the car and Nolan to lie down in the ditch. Steiner and the others began trying to lift the car out of the ditch.

While they were trying to free the car, a man named Corey Burkett drove down the road. Steiner, Walker, Wilson, and Ware ran into the woods and warned Patterson and Nolan not to try anything. However, Patterson motioned for Burkett to stop. Burkett began to slow down, but then he quickly drove away when one of the men shot at his vehicle. Steiner and the others returned from the woods, resumed trying to free the car, and managed to get it out of the ditch. They ordered Patterson to lie down in the ditch by Nolan and drove off in the Impala, with Steiner driving.

Soon after Steiner drove off, a police officer started pursuing the Impala. Steiner began to slow down because, according to Walker, he was considering telling the police what happened. But the others told Steiner to keep going, and he did. He eventually lost the police. The men abandoned the car, ran into the woods, and called someone to give them a ride home. The victims reported the

6

carjacking that evening, and Steiner, Walker, Wilson, and Ware were arrested within a few days.

After the close of evidence, the district court instructed the jury. The jury charge included an instruction on aiding and abetting the using or carrying of a firearm during and in relation to a crime of violence. But, because *Rosemond* had not yet been decided, the court did not instruct the jury that it must find that Steiner had advance knowledge that a co-conspirator would use or carry a firearm during the carjacking. Steiner's counsel did not object to the lack of an instruction. The jury found Steiner guilty on all three counts charged in the indictment. The district court sentenced Steiner to a total sentence of 195 months.

Steiner appealed his convictions and sentences. He argued, in relevant part, that there was insufficient evidence to support his conviction for aiding and abetting a § 924(c) offense because there was no evidence that he had carried or discharged a firearm. We affirmed Steiner's conviction under the pre-*Rosemond* framework for aiding and abetting a § 924(c) offense. *United States v. Ware*, 440 F. App'x 745, 748–49 (11th Cir. 2011). In doing so, we noted that "Steiner was also aware that Ware had placed guns into the Blazer before the men left to 'go hit a lick.'" *Id.* at 749.

In 2014, the Supreme Court issued its decision in *Rosemond*. Subsequently, Steiner filed the present § 2255 motion, raising three arguments. First, he argued

that there was insufficient evidence to support his conviction for aiding and abetting a § 924(c) offense because the government did not present evidence at trial showing that he had advance knowledge one of his co-conspirators would use or carry a firearm during the robbery-turned-carjacking.  He asserted that this claim was timely because *Rosemond* announced a new rule that applies retroactively.  Second, he argued that the district court erred by failing to instruct the jury that advance knowledge was required to support a conviction for aiding and abetting a § 924(c) violation, as required by *Rosemond*.  Third, he argued that his trial counsel was ineffective for failing to object to the erroneous jury instructions.

Steiner amended his motion in January 2016 to include a claim under *Johnson v. United States*, in which the Supreme Court held that the residual clause of the Armed Career Criminal Act is unconstitutionally vague.  576 U.S. ___, 135 S. Ct. 2551, 2563 (2015).  Specifically, he argued that his conviction for aiding and abetting a § 924(c) offense was invalid because the predicate offense—aiding and abetting a carjacking—no longer qualified as a crime of violence under the similarly worded residual clause of § 924(c)(3)(B).

The district court denied Steiner's § 2255 motion.  The court first concluded that Steiner's *Rosemond* claim was untimely because *Rosemond* did not announce a new rule that applied retroactively to cases on collateral review.  The court relied on our opinion in *United States v. Quartavious Davis*, in which we stated that

8

*Rosemond* "clarified" the government's burden of proof for obtaining a conviction for aiding and abetting a violation of § 924(c). 754 F.3d 1205, 1222 (11th Cir. 2014) (*Quartavious Davis*), *reh'g en banc granted*, *opinion vacated*, 573 F. App'x 925 (11th Cir. 2014), *and reinstated in part*, 785 F.3d 498 (11th Cir. 2015) (en banc). The district court further concluded that Steiner's *Rosemond* claim failed on the merits for two reasons. The court relied on our statement on direct appeal that "Steiner was also aware that Ware had placed guns into the Blazer before the men left to 'go hit a lick.'" In addition, the court found that Steiner's continued participation in the carjacking after Wilson and Ware initially used the firearms was sufficient to show that he had advance knowledge that his co-conspirators would use firearms during the offense.

Next, the district court found that Steiner's jury-instruction and ineffective-assistance-of-counsel claims were untimely for the same reason his direct *Rosemond* claim was untimely. The court also found that the jury-instruction claim was procedurally barred because Steiner had not raised it on direct appeal and counsel could not be deemed ineffective for failing to predict a Supreme Court ruling. Finally, the court found that *Johnson* did not invalidate Steiner's § 924(c) conviction because aiding and abetting a carjacking qualified as a crime of violence under the elements clause of § 924(c)(3)(A).

9

Steiner appealed and moved for a COA on all four claims. The district court granted a COA on the following issues: (1) whether Steiner's § 924(c) conviction was unconstitutional in light of *Rosemond*; (2) whether the same conviction was unconstitutional in light of *Johnson*; and (3) whether counsel was ineffective for failing to object to the jury instructions. The court did not address Steiner's request for a COA on the issue of whether the jury instructions themselves were erroneous under *Rosemond*.

On appeal, Steiner recasts his *Johnson* claim as a claim under the Supreme Court's recent decision in *Davis*. *See Davis*, 139 S. Ct. at 2336. In addition to arguing the issues specified in the COA, Steiner argues that the district court erred by failing to address his jury-instruction claim in the order granting a COA. He requests that we remand to the district court for the limited purpose of addressing that issue.

## II. Standards of Review

In evaluating the district court's denial of a motion to vacate under § 2255, we review legal conclusions de novo and factual findings for clear error. *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam).

We also review de novo whether the evidence was sufficient to sustain a jury's verdict in a criminal trial. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). In doing so, we "view the evidence in the light most favorable to

10

the government, with all reasonable inferences and credibility choices made in the government's favor." *United States v. Christo*, 129 F.3d 578, 579 (11th Cir. 1997) (per curiam).

The relevant question when a state prisoner seeks federal habeas relief based on insufficient evidence is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We have not explicitly established that we apply this standard when reviewing a federal prisoner's insufficient-evidence claim in the context of a § 2255 motion. However, at least two of our sister circuits have done so. *See, e.g.*, *Ginsburg v. United States*, 909 F.2d 982, 990 (7th Cir. 1990); *United States v. Ware*, 416 F.3d 1118, 1120–21 (9th Cir. 2005). And we have stated that we apply this standard to review federal convictions in the context of a direct appeal. *See, e.g.*, *Christo*, 129 F.3d at 579. We now clarify that this standard applies in the context of a § 2255 motion as well.

Additionally, ineffective-assistance-of-counsel claims are mixed questions of law and fact that we review de novo. *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). Similarly, we review de novo whether a prior conviction is a crime of violence under § 924(c). *See United States v. Dixon*, 874 F.3d 678, 680 (11th Cir. 2017) (reviewing de novo whether a prior conviction qualified as a crime of violence under the Sentencing Guidelines).

### III.  Analysis

#### A.  The *Rosemond* Claim

The first question we address is whether Steiner is entitled to relief under *Rosemond*.  In order to reach this question, we must first decide whether *Rosemond* applies retroactively to cases on collateral review.  The government concedes that it does.  We agree with the government.  Nevertheless, Steiner is not entitled to relief on the merits of his claim, so we affirm the district court.

#### 1.  Rosemond *Applies Retroactively on Collateral Review*

Ordinarily, movants must file their § 2255 motions within one year, which runs from the latest of four possible triggering dates.  28 U.S.C. § 2255(f)(1)–(4).  The applicable triggering date in this appeal is "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  *Id.* § 2255(f)(3).  A new rule announced by the Supreme Court applies retroactively on collateral review only in limited circumstances.  *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004).  "[A] court other than the Supreme Court may determine retroactivity under § 2255(f)(3)."  *Figuereo-Sanchez v. United States*, 678 F.3d 1203, 1207 (11th Cir. 2012).

In determining retroactivity under § 2255(f)(3), we first determine whether the Supreme Court decision in question announced a new rule.  *Id.*  "[A] case

announces a new rule when it breaks new ground or imposes a new obligation" on the government. *Teague v. Lane*, 489 U.S. 288, 301 (1989). "To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id.* (emphasis omitted). Where the decision merely clarifies an existing rule, however, it does not announce a new rule, and the movant cannot rely on the extended limitation period in § 2255(f)(3). *Figuereo-Sanchez*, 678 F.3d at 1207 n.4.

If we determine that the Supreme Court has announced a new rule, we "must then determine whether that new rule satisfies an exception to the general prohibition against the retroactive application of new rules on collateral review." *Id.* at 1208. There are two exceptions to this general prohibition: new substantive rules and "watershed rules of criminal procedure." *Schriro*, 542 U.S. at 351–52. Relevant to this appeal, new substantive rules include "decisions that narrow the scope of a criminal statute by interpreting its terms" and "constitutional determinations that place particular conduct or persons covered by the statute beyond the [government's] power to punish." *Id.*

Section 924(c) criminalizes the using or carrying of a firearm during and in furtherance of a crime of violence. 18 U.S.C. § 924(c)(1)(A). The federal aiding-and-abetting statute provides that a person who aids or abets the commission of an offense is liable as a principal. 18 U.S.C. § 2. At the time of

13

Steiner's conviction, the government was required to show the following to obtain a conviction for aiding and abetting a § 924(c) offense: (1) "the substantive offense of carrying or using a firearm in relation to a crime of violence was committed"; (2) "the defendant associated himself with the criminal venture"; and (3) the defendant "committed some act that furthered the crime." *United States v. Williams*, 334 F.3d 1228, 1232 (11th Cir. 2003). In March 2014, however, the Supreme Court in *Rosemond* addressed a circuit split regarding the requirements of a conviction for aiding and abetting a § 924(c) offense. 572 U.S. at 67, 69–70.

*Rosemond* involved a dispute regarding the intent requirement of § 2 in the context of aiding and abetting a § 924(c) offense. *See id*. at 69–70. The Court held that a defendant has the requisite intent if he "actively participated in the underlying . . . violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." *Id.* at 67, 77. The Court explained that the "defendant's knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice," such as "to alter [the] plan," "withdraw from the enterprise," or "go ahead with his role in the venture." *Id.* at 78. Said differently, the Court defined "advance knowledge" as "knowledge at a time the accomplice can do something with it—most notably, opt to walk away." *Id.* The Court noted that "when an accomplice knows nothing of a gun until it appears at the scene, . . . he

14

may at that late point have no realistic opportunity to quit the crime." *Id.*

Nevertheless, it noted that a jury may infer from a defendant's "failure to object or

withdraw" that he had advance knowledge, if he continues to participate in the

crime after a confederate displays or uses a gun. *Id.* at 78 n.9.

We conclude that *Rosemond* announced a new rule because it produced a

result that was not dictated by pre-existing precedent. *See Teague*, 489 U.S.

at 301. Before *Rosemond*, the law of this Circuit, and others, did not require the

government to prove that the defendant had advance knowledge that a

co-conspirator would be armed. *See Williams*, 334 F.3d at 1232. Indeed,

*Rosemond* addressed a split among the circuits regarding the requirements for

aiding and abetting a § 924(c) conviction. *Compare United States v. Wiseman*, 172

F.3d 1196, 1217 (10th Cir. 1999) (holding that a defendant "knowingly and

actively participated" in the underlying offense because he "knew that [the

principal] was carrying [a] firearm"), *with United States v. Thompson*, 454 F.3d

459, 465 (5th Cir. 2006) (requiring that a defendant take some action to

intentionally facilitate or encourage the principal's use of the firearm).

We also conclude that the new rule announced in *Rosemond* is substantive,

as it narrowed the scope of aiding and abetting a § 924(c) offense. *See Schriro*,

542 U.S. at 351–52. In doing so, we reach the same conclusion as the Seventh

Circuit, the only other circuit to consider whether *Rosemond* applies retroactively.

15

*See Farmer v. United States*, 867 F.3d 837, 841–42 (7th Cir. 2017) (explaining that *Rosemond* announced a new substantive rule and, thus, applies retroactively to cases on collateral review).

Before *Rosemond*, "accomplice liability was possible even if the defendant learned of a coconspirator's use of the gun while the crime was underway—as long as the defendant continued to participate after learning about the gun." *Id.*; *see also Williams*, 334 F.3d at 1232 (stating the requirements for accomplice liability pre-*Rosemond*). *Rosemond*, however, limited aiding and abetting § 924(c) liability to instances where a defendant had advance knowledge that a firearm would be used in the commission of the underlying crime of violence. *See* 574 U.S. at 67. While continued participation can support an inference of advance knowledge under *Rosemond*, the government must "prove that the defendant learned about the gun with enough time to try to change his confederate's plan or to remove himself from the venture altogether." *Farmer*, 867 F.3d at 841; *Rosemond*, 574 U.S. at 78 n.9. Thus, because *Rosemond* "alters the range of conduct . . . that the law punishes," it constitutes a new substantive rule that applies retroactively on collateral review. *See Schriro*, 542 U.S. at 351–53.

Our statement in *Quartavious Davis* that *Rosemond* "clarified" the elements of aiding and abetting a § 924(c) offense is not in conflict with our decision today that *Rosemond* announced a new substantive rule. *See Quartavious Davis*, 754

16

F.3d at 1222.  Granted, a decision that "merely clarifies an old rule" does not announce a new rule for the purposes of retroactivity.  *Figuereo-Sanchez*, 678 F.3d at 1207 n.4.  But whether *Rosemond* applies retroactively on collateral review was not at issue in *Quartavious Davis*.  *Quartavious Davis* concerned Davis's claim—on direct appeal—that his conviction for aiding and abetting a § 924(c) offense was not supported by sufficient evidence.  *See* 754 F.3d at 1222.  In that circumstance, our use of the word "clarified" indicated the changed standard for obtaining a conviction for aiding and abetting a § 924(c) offense, rather than our determination of *Rosemond*'s retroactivity on collateral review.

## 2.  *Sufficient Evidence Supported Steiner's § 924(c) Conviction*

The final and determinative question we must answer to decide Steiner's *Rosemond* claim is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Steiner had advance knowledge that his co-conspirators would use or carry a firearm during and in relation to the carjacking.  *See Jackson*, 443 U.S. at 324; *Rosemond*, 572 U.S. at 67.  On appeal, Steiner contends that the government presented no evidence at trial showing he had either (1) advance knowledge his co-conspirators would take firearms to the scene of the carjacking or (2) a reasonable opportunity to withdraw from the crime after it began.  We disagree.

17

To be sure, the evidence at trial suggesting that Steiner had knowledge of the firearms before arriving at the scene of the robbery and eventual carjacking was thin. One of Steiner's co-conspirators, Walker, testified that he, Steiner, Wilson, and Ware agreed to "go hit a lick," i.e., they agreed to rob someone together. He also testified that Ware alone loaded the two guns into the Blazer—although one gun was an AK-47 with a long magazine, and Ware made no effort to conceal the guns from the others as he did so. Finally, Walker testified that Ware rode in the backseat of the Blazer, directly behind Steiner in the driver's seat. The government presented no evidence directly showing that the group agreed to or discussed bringing firearms to commit the robbery, that the guns were located in a part of the Blazer where Steiner would likely see them, or that Steiner was otherwise aware of the guns before his co-conspirators initially brandished and fired them.

But *Rosemond* recognizes that a jury may infer a defendant's advance knowledge from the defendant's actions after a crime is underway. *See* 572 U.S. at 78 n.9. And we agree with the district court that the evidence of Steiner's continued participation in the offense after Wilson and Ware first fired the guns supports finding that he had advance knowledge. Specifically, after Wilson and Ware initially fired the guns, Steiner and his co-conspirators discovered that the Blazer would not start, paused to converse amongst themselves, and decided to

18

take Patterson's Impala. Steiner then participated in freeing the Impala from the ditch and hiding in the woods when Burkett drove down the road. Indeed, Walker testified that it was Steiner who ultimately drove the Impala away from the scene and evaded the police.

Conversely, the Court in *Rosemond* explained that advance knowledge is not present when a defendant only learns of a gun's presence when he no longer has a "realistic opportunity to quit the crime." *Id.* at 78. Here, Steiner had limited options for extracting himself from the situation, given that the Blazer was immobilized on a secluded road near the woods when his co-conspirators first fired the guns. Nonetheless, the robbery-turned-carjacking spanned a significant amount of time. The men had time to step away for a discussion about taking the Impala, during which Nolan had time to call her mom. They had time to begin removing the car from the ditch, stop and hide in the woods from Burkett, and return to the Impala and free it from the ditch. Additionally, two people from the victim's car successfully escaped into the very woods in which Steiner hid from Burkett. Based on this evidence, a reasonable jury could infer that Steiner still had an opportunity to "quit the crime" after he learned of the guns' presence. *See id.* Therefore, sufficient evidence supported his conviction for aiding and abetting a § 924(c) offense.

19

One further point bears mentioning.  Our statement on direct appeal regarding Steiner's awareness of the guns is not relevant to our decision today regarding his advance knowledge.  On direct appeal, we addressed whether sufficient evidence supported Steiner's conviction for aiding and abetting a § 924(c) offense under the pre-*Rosemond* framework, given that he did not personally use or carry a firearm during the carjacking.  *Ware*, 440 F. App'x at 747–49.  We concluded that sufficient evidence established that Steiner "associated himself with the carjacking and committed acts in furtherance thereof by driving the stolen vehicle."  *Id.* at 749.  We then added that "Steiner was also aware that Ware had placed guns into the Blazer before the men left to 'go hit a lick.'"  *Id.*  It would be unfair to read this statement as deciding that Steiner's awareness amounted to advance knowledge as defined in *Rosemond*.  As stated above, there was no evidence presented at trial clearly establishing that Steiner was aware of the guns before his co-conspirators first fired them.  Further, we decided Steiner's appeal without the benefit of the new rule in *Rosemond*.  Simply put, Steiner's advance knowledge of the guns was not at issue and was not decided on direct appeal.

### B.  The *Davis* Claim

Steiner separately challenges his conviction for aiding and abetting a § 924(c) offense under *Davis*, in which the Supreme Court struck down the

residual clause of § 924(c)(3)(B) as unconstitutionally vague.  *See* 139 S. Ct. at 2336.  Because our prior precedent in *In re Colon* binds us, we will quickly dispense with this claim and affirm the district court.  826 F.3d 1301, 1305 (11th Cir. 2016).

As explained above, § 924(c) criminalizes carrying or using a firearm in furtherance of a crime of violence.  18 U.S.C. § 924(c)(1)(A).  Under § 924(c), a crime of violence is defined as "an offense that is a felony" and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3)(A)–(B).  We often refer to § 924(c)(3)(A) as the "elements clause" and § 924(c)(3)(B) as the "residual clause."  *Thompson v. United States*, 924 F.3d 1153, 1155 (11th Cir. 2019).  In light of *Davis*, Steiner's conviction for aiding and abetting a violation of § 924(c) is valid only if his underlying conviction for aiding and abetting a carjacking qualifies under the elements clause of § 924(c)(3)(A).  *See* 139 S. Ct. at 2336.  Based on our prior precedent, it does.

We have previously held that carjacking qualifies as a crime of violence under § 924(c)(3)(A).  *Ovalles v. United States*, 905 F.3d 1300, 1304 (11th Cir. 2018) (per curiam), *cert. denied*, 139 S. Ct. 2716 (2019).  And we have also held

21

that a conviction for aiding and abetting a crime of violence qualifies as a crime of violence for purposes of § 924(c)(3)(A). *In re Colon*, 826 F.3d at 1305; *see also United States v. St. Hubert*, 909 F.3d 335, 346 (11th Cir. 2018) (holding that decisions issued in the context of applications for leave to file a second or successive § 2255 motion are binding precedent on all subsequent panels of this Court), *cert. denied*, 139 S. Ct. 1394 (2019).[4] It follows, then, that aiding and abetting a carjacking is a crime of violence under the elements clause of § 924(c)(3)(A). Accordingly, we find no error in the district court's denial of Steiner's *Davis* claim.

---

[4] Steiner also argues that this court's holding in *In re Colon* is not controlling here for two reasons. First, he argues that *In re Colon* is wrongly decided because it is contrary to *Rosemond*'s interpretation of the federal aiding-and-abetting statute, 18 U.S.C. § 2. Specifically, Steiner asserts that this court's reasoning in *In re Colon*—that an aider and abettor of an offense necessarily commits all the elements of the principal offense—conflicts with the Supreme Court's statement in *Rosemond* that "a defendant can be convicted as an aider and abettor without proof that he participated in each and every element of the offense." *In re Colon*, 826 F.3d at 1305; *Rosemond*, 572 U.S. at 72. Second, Steiner argues that this court's holding in *In re Colon* should only apply to applications for leave to file a second or successive § 2255 motion.

Some have challenged this court's prior ruling that published panel orders in the second or successive context bind all panels of this court. *See In re Williams*, 898 F.3d 1098, 1099–1105 (11th Cir. 2018) (Wilson, J., concurring). However, *St. Hubert* binds us because neither this court sitting en banc nor the Supreme Court has overruled it. *See United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) ("We may disregard the holding of a prior opinion only where that holding is overruled by the Court sitting en banc or by the Supreme Court." (internal quotation mark omitted)). Accordingly, *In re Colon* and *St. Hubert* foreclose Steiner's additional arguments.

C. The Ineffective-Assistance-of-Counsel Claim

We also agree with the district court's conclusion that Steiner's counsel was not ineffective for failing to object to the jury instructions as erroneous under *Rosemond*.

To show that counsel was ineffective, a defendant must show that (1) his counsel's performance was deficient, and (2) the performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's failure to anticipate a change in the law does not constitute ineffective assistance. *See Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1334 (11th Cir. 2016) (explaining that "we have held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop" (alterations accepted)).

Here, Steiner stood trial in 2009—approximately five years before *Rosemond*—and the district court instructed the jury in a manner consistent with the requirements for aiding and abetting a § 924(c) offense at the time. *See Williams*, 334 F.3d at 1232. Under these circumstances, Steiner's counsel was not ineffective for failing to challenge the jury instructions based on the reasoning in *Rosemond*. Therefore, we find no error in the district court's denial of this claim.

D.  The Certificate-of-Appealability Issue

Finally, Steiner takes issue with the district court's silence regarding his jury-instruction claim in its order specifically granting a COA on the three claims discussed above.  Steiner asks us to construe this silence as a failure to grant or deny a COA on the jury-instruction claim and remand to the district court so that it may rule on a COA as to that claim.  We decline to do either.

Ordinarily, we do not address issues not specified in the COA.  *Murray v. United States*, 145 F.3d 1249, 1251 (11th Cir. 1998) (per curiam).  But we do remand on a limited basis for a district court to rule on the propriety of a COA where it has not already done so.  *See, e.g.*, *Perez v. Sec'y, Fla. Dep't of Corr.*, 711 F.3d 1263, 1264 (11th Cir. 2013) (remanding to the district court to rule on a COA regarding the denial of a Federal Rule of Civil Procedure 59(e) motion).

That is not the case here.  The district court specified the three claims on which it was granting a COA.  The court was not required to state its reasons for denying a COA on the jury-instruction claim.  *See* Fed. R. App. P. 22(b)(1) (2009 Amendments) (removing the requirement that a district court judge's denial of a COA must be accompanied by an explanation).  Of course, after the district court's denial, Steiner could have moved this court to expand the COA to address this issue, but he did not.  *See Jones v. United States*, 224 F.3d 1251, 1256 (11th Cir. 2000) (expanding the COA to include a previously uncertified issue following the

24

movant's explicit request to expand the COA).  Accordingly, we will not remand to the district court to rule on a COA as to the jury-instruction claim.

## IV.  Conclusion

In sum, we hold today that *Rosemond* announced a new substantive rule that applies retroactively on collateral review.  However, Steiner does not benefit from that new rule because the evidence at trial was such that a rational trier of fact could conclude beyond a reasonable doubt that he had advance knowledge that his co-conspirators would use or carry firearms during the carjacking.  We also conclude that *Davis* does not affect Steiner's conviction for aiding and abetting a § 924(c) offense because our prior precedent demonstrates that aiding and abetting a carjacking is a crime of violence under § 924(c)(3)(A)'s elements clause.  Further, we conclude that counsel was not ineffective for failing to challenge the jury instructions based on a change in the law that had not yet occurred.  Finally, we find no reason to remand to the district court to rule on a COA regarding Steiner's jury-instruction claim because the district court effectively did so in its order granting a COA on the three issues discussed above.  Therefore, we affirm the district court's denial of Steiner's § 2255 motion.

**AFFIRMED**.

25

PROCTOR, District Judge, Concurring:

I concur fully in the panel's well-reasoned opinion. I write separately to clarify one point related to Steiner's *Rosemond*[1] claim.

Steiner was charged with aiding and abetting the offense of using or carrying a firearm during or in relation to a crime of violence. 18 U.S.C. § 924(c). The underlying crime of violence at issue on this appeal was carjacking. His arguments might have more traction if the section 924(c) charge related to an armed robbery.

The facts related to the 924(c) offense are straightforward. Steiner and his confederates planned to "hit a lick" - that is, commit a robbery. And that is exactly what they did. They spotted four young victims at a gas station, followed their car, forced them to stop on a road, and robbed them at gunpoint. After accomplishing the robbery, and as they attempted to flee the scene, Steiner and his cohort ran into a problem. Their car would not start. After huddling together, the compatriots agreed to enter into another (and separate) criminal scheme – to take the victims' car at gunpoint. Steiner actively participated in the carjacking. Among other things, it was Steiner who drove the stolen the car away from the scene.

The carjacking was an offense which was separate and apart from the robbery. Indeed, Walker, a cooperating witness, testified at trial that the carjacking was not part of the original robbery scheme. And importantly, the carjacking offense was not

---

[1] *Rosemond v. United States*, 572 U.S. 65 (2014).

26

initiated until after the armed robbery was essentially completed and a getaway car was unexpectedly needed. Then, and only then, was the carjacking plan hatched. By that point, Steiner was fully aware that others in his group possessed firearms (and had discharged them during the earlier robbery). This is important because it demonstrates that Steiner was aware of the presence and use of weapons at the scene before he agreed to "take[] a motor vehicle." 18 U.S.C. § 2119. So, in reality, as it relates to the carjacking scheme at issue here, Steiner never had to make a "realistic decision" of whether to "quit the crime" (again, by that time the robbery was virtually complete). *See Rosemond*, 572 U.S. at 78. Rather, he and the others decided to embark upon a separate crime—armed carjacking—with full knowledge that the weapons they knew were present would be used.

Based upon this evidence, a reasonable jury could infer that Steiner had full knowledge of the presence of the weapons at the time he agreed to participate in the carjacking offense. The same reasonable jury could also infer that he was fully aware that the weapons would be used in the carjacking. *Rosemond* is of no help to him, and there was more than sufficient evidence to support his conviction on the section 924(c) charge.

I would affirm on that basis.