[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-10586

Non-Argument Calendar

_____

UNISES CHAPOTIN,

                                                    Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,


                                                    Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket Nos. 1:16-cv-21965-JEM,
1:04-cr-20305-JEM-3

_____

Before JORDAN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Unises Chapotin, a federal prisoner, appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate his sentence. The district court granted him a certificate of appealability on the following three issues: (1) whether sentences under the former mandatory pre-*Booker*[1] sentencing guidelines are subject to a void-for-vagueness challenge; (2) whether published orders issued in the context of applications for leave to file second or successive motions to vacate are binding upon district courts in determining an initial motion to vacate; and (3) whether the district court erred in applying the reasonable probability harmless error review standard to the *Stromberg*[2] error in his trial, and whether the court erred in determining that the *Stromberg* error was harmless. After review, we affirm.

## I.     Background

We described the facts of this case in Chapotin's direct appeal as follows:

---

[1] *United States v. Booker*, 543 U.S. 220 (2005).

[2] In *Stromberg v. California*, the Supreme Court held that where a jury returns a general verdict which may have been based on any of several grounds, one of which is constitutionally invalid, and it is "impossible to say" on which ground the jury rested its verdict, "the conviction cannot be upheld." 283 U.S. 359, 368 (1931).

Unises Chapotin was among a group of men who agreed to rob a drug courier of a large quantity of cocaine. The operation was planned so it would appear to the supplier of cocaine that an actual robbery, known in the illegal drug business as a "rip-off," had occurred, when in fact the drug courier was in on the robbery. Unbeknownst to Chapotin and his confederates, one of the participants was a confidential informant, the disgruntled drug courier was actually a government agent, and the drugs and the supplier were fictitious.

Chapotin became involved in the operation at the last minute because another intended participant was a no-show. On the day the robbery was to occur, Chapotin was picked up in a car driven by an uninvolved party and occupied by co-conspirators Oscar Torres and Jorge Moreno. The group then drove to a restaurant parking lot, where Torres, Moreno and Chapotin were picked up in a vehicle driven by the confidential informant, known by the first name "Ulises" (not to be confused with Chapotin's first name, "Unises"). Torres was seated in the front passenger seat, Moreno was sitting in the back seat behind the driver, and Chapotin was sitting in the back seat behind Torres. The parties drove to a warehouse area to pick up a van which was to be used to transport the drugs following the robbery. Upon arriving there, they were arrested.

*United States v. Chapotin*, 173 F. App'x 751, 752 (11th Cir. 2006) (unpublished). Chapotin was charged with conspiracy to possess

with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) (Count 1); conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) (Count 2); conspiracy to carry a firearm during and in relation to, or to possess a firearm in furtherance of, a crime of violence and/or a drug trafficking crime in violation of 18 U.S.C. § 924(o) (Count 3); attempted possession of cocaine with intent to distribute it in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) (Count 4); carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a crime of violence and/or a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 5); and possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 8). Importantly, Counts 3 and 5 specified that the predicates for those counts were the offenses "set forth in Counts 1, 2, and 4."

The jury instructions for Chapotin's § 924(c) charge in Count 5 provided that it was a crime to "carry a firearm during and in relation to or possess a firearm in furtherance of a federal *drug trafficking crime, crime of violence, or both*." (emphasis added). The instructions explained that, to find Chapotin guilty, the jury had to find beyond a reasonable doubt that he "committed a *drug trafficking offense or crime of violence* charged in Counts 1, 2, or 4 of the indictment." The instructions also provided that it was not necessary for the government to prove that Chapotin violated the law in both of those ways. Rather, it was sufficient if the government proved either one of those ways beyond a reasonable doubt, and the jury had to unanimously agree upon the way in

which Chapotin committed the violation.  The jury instructions for Count 3—the § 924(o) count—were materially identical.  The jury found Chapotin guilty on all counts, but did not specify whether the predicate for Counts 3 and 5 was Count 1, 2, or 4 alone or a combination of those Counts.

Applying the then mandatory 2004 Sentencing Guidelines,[3] the district court determined that Chapotin was a career offender under U.S.S.G. § 4B1.1 based on two prior qualifying crime of violence convictions—(1) Florida battery on a law enforcement officer, and (2) Florida aggravated assault with a deadly weapon.[4] Chapotin argued that his criminal history score of VI, which was based on his career-offender status, overrepresented his criminal history, and so he requested a downward departure.  The district court agreed to depart downward to a category V, which resulted in a guidelines range of 324 to 405 months' imprisonment, plus a consecutive term of 60 months' imprisonment.[5]  The district court

_____

[3] In 2005, the Supreme Court held that the Sixth Amendment right to a trial by jury was violated where, under a mandatory guidelines scheme, a defendant's sentence was increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury.  *Booker*, 543 U.S. at 233–37.  Following *Booker*, the guidelines scheme is now advisory.  *Id.* at 245.

[4] Chapotin unsuccessfully objected to the career-offender enhancement, arguing, in relevant part, that his conviction for battery on a law enforcement officer was not a crime of violence.

[5] Chapotin faced a statutory maximum of life imprisonment.

imposed a total sentence of 384 months' imprisonment followed by five years of supervised release.[6]

On direct appeal, we reversed Chapotin's conviction for possession of a firearm by a convicted felon because there was insufficient evidence to support it, but affirmed his other convictions and sentences. *Chapotin*, 173 F. App'x at 752–53. The district court entered an amended judgment in 2006.

Nine years later, the Supreme Court struck down the residual clause in the Armed Career Criminal Act's ("ACCA") definition of a violent felony as unconstitutionally vague. *See Johnson v. United States*, 576 U.S. 591, 597–602 (2015). Thereafter, the Supreme Court held that *Johnson* announced a new substantive rule that applied retroactively to cases on collateral review. *Welch v. United States*, 578 U.S. 120, 127–30, 134–35 (2016).

Chapotin in turn filed his first *pro se* 28 U.S.C. § 2255 motion to vacate sentence in 2016. He argued that the residual clause in the mandatory guidelines' crime of violence definition—which was virtually identical to the ACCA's residual clause—was unconstitutionally vague, and that he no longer qualified as a

---

[6] Specifically, the district court imposed concurrent terms of 324 months' imprisonment for Counts 1 and 4, 240 months' imprisonment as to Counts 2 and 3, and 120 months as to Count 8, plus a consecutive term of 60 months' imprisonment as to Count 5. Notably, the district court explained that it would have imposed the same sentence even without the mandatory guidelines framework.

career offender because his conviction for battery of a law enforcement officer no longer qualified as a crime of violence post-*Johnson*. He also argued that his § 924(c) conviction (Count 5) for possession of a firearm in relation to a crime of violence and/or a drug trafficking crime was unconstitutional, because conspiracy to commit Hobbs Act Robbery—the purported crime of violence—was no longer a crime of violence post-*Johnson*. The district court appointed counsel to represent Chapotin, and counsel filed supplemental briefing.

The government opposed the § 2255 motion, arguing that *Johnson* had no effect on the guidelines, and, therefore, Chapotin's career-offender challenge was not cognizable, was untimely and procedurally barred, and was foreclosed by our decision in *In re Griffin*, 823 F.3d 1350, 1354 (11th Cir. 2016), in which we held that "[t]he Guidelines—whether mandatory or advisory—cannot be unconstitutionally vague because they do not establish the illegality of any conduct and are designed to assist and limit the discretion of the sentencing judge." It also argued that Chapotin procedurally defaulted his § 924(c) challenge because he failed to raise it at trial or on direct appeal. Finally, it argued that his claims failed on the merits.

Chapotin filed a motion to hold the district court proceedings in abeyance pending the Supreme Court's decision in *Beckles v. United States*, No. 15-8544, which involved a *Johnson*-based challenge to the career-offender provision of the advisory sentencing guidelines. The district court granted the motion.

Subsequently, in *Beckles*, the Supreme Court held that the advisory guidelines are not subject to a vagueness challenge under the Due Process Clause, and, therefore, the residual clause of the career-offender guideline's definition of "crime of violence" was not void for vagueness. *Beckles v. United States*, 137 S. Ct. 886, 892 (2017). *Beckles* did not address vagueness challenges in the context of the mandatory guidelines scheme.

Additionally, while Chapotin's § 2255 motion was pending in the district court, the Supreme Court extended its holding in *Johnson* to 18 U.S.C. § 16(b)'s residual clause, and 18 U.S.C. § 924(c)'s residual clause, holding that those clauses were also unconstitutionally vague. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1216 (2018) (addressing § 16(b)'s residual clause); *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019) (addressing § 924(c)).

Following supplemental briefing by the parties on the effect of *Beckles* and *Davis*,[7] a magistrate judge issued a report and recommendation ("R&R"), recommending that Chapotin's § 2255 motion be denied.

First, the magistrate judge concluded that Chapotin's career-offender challenge was not cognizable because his sentence was

---

[7] In his supplemental briefing, Chapotin also argued that both his § 924(o) conviction (Count 3) and § 924(c) conviction (Count 5) must be vacated in light of *Davis* and because there was a *Stromberg* error in that the general verdict did not specify whether the jury convicted him of possessing a firearm during and in relation to the crime of violence of the drug trafficking crimes.

less than the statutory-maximum. The magistrate judge also concluded that the career-offender claim was foreclosed by *Griffin*, and rejected Chapotin's argument that *Beckles* had abrogated *Griffin*.

Second, the magistrate judge concluded that Chapotin's § 924(c) challenge failed because he did not prove by a preponderance of the evidence that his § 924(c) and § 924(o) convictions were based on the now invalid crime of violence predicate—conspiracy to commit Hobbs Act robbery (Count 2)—and not on the still-valid predicate drug-trafficking crimes in Counts 1 or 4. The magistrate judge found that, even though there was a *Stromberg* error in Chapotin's case, the error was harmless.

Nevertheless, the magistrate judge recommended that a certificate of appealability (COA) issue on the following: (1) whether sentences under the former mandatory pre-*Booker* sentencing guidelines are subject to a void-for-vagueness challenge; (2) whether published orders issued in the context of applications for leave to file second or successive motions to vacate are binding upon district courts in determining an initial motion to vacate; and (3) whether the district court erred in applying the reasonable probability harmless error review standard to the *Stromberg* error, and whether the court erred in determining that the *Stromberg* error in this case was harmless.

Chapotin objected to the R&R, arguing that his career-offender claim was cognizable and was not foreclosed by *Griffin*, which he maintained was wrongly decided and abrogated by

*Beckles*. He further argued that applying *Griffin* to all movants, even though *Griffin* arose in the context of an application for leave to file a second or successive § 2255 motion, violated the Due Process Clause. He also maintained that his career-offender challenge was timely. With regard to his *Davis*-based challenge, Chapotin asserted that the district court applied the wrong standard, that the *Stromberg* error was not harmless, that his §§ 924(c) and (o) convictions were unconstitutional, and that he established cause and prejudice and actual innocence to overcome any procedural default.[8]

The district court adopted the R&R.[9] Nevertheless, the district court agreed with the magistrate judge's recommendation to issue a COA on the three issues specified "[g]iven the complexities and legal controversy concerning the issues in this case."

## II.    Standard of Review

"When we review the denial of a motion to vacate a sentence . . . we review legal conclusions *de novo* and findings of

---

[8] The government also filed objections to the R&R because the R&R failed to discuss the procedural arguments that it had raised related to timeliness and procedural default.

[9] The district court also concluded that Chapotin's career-offender challenge was untimely and that both Chapotin's career-offender and § 924 challenges were procedurally defaulted.

fact for clear error." *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quotation omitted).

## III.    Discussion

### A.    Issues 1 and 2

The first two issues are related: (1) whether sentences under the former mandatory sentencing guidelines are subject to a void-for-vagueness challenge, and (2) whether published orders issued in the context of applications for leave to file second or successive motions to vacate are binding upon district courts in determining an initial motion to vacate. Therefore, we address them together.

Chapotin argues that the district court erred in denying his career-offender challenge based on *Griffin*. He maintains that *Griffin* was wrongly decided and regardless has been undermined to the point of abrogation by *Beckles* and *Dimaya*. Relatedly, he argues that *Griffin* should not be binding outside of the second or successive application context, and that our decision to the contrary in *United States v. St. Hubert*[10] was wrongly decided. Chapotin's argument is unpersuasive.

Following the Supreme Court's decision in *Johnson*, we held in *United States v. Matchett* that *Johnson* did not render the residual clause of the career-offender guideline unconstitutional because the vagueness doctrine does not apply to advisory

---

[10] 909 F.3d 335 (11th Cir. 2018), overruled in part on other grounds by *Davis*, 139 S. Ct. 2319, and *United States v. Taylor*, 142 S. Ct. 2015 (2022).

guidelines.  802 F.3d 1185, 1193–96 (11th Cir. 2015).  Thereafter, in *Griffin*, in denying an application for leave to file a second or successive motion under § 2255, we extended *Matchett*'s holding to the mandatory guidelines.  823 F.3d at 1354 ("[T]he logic and principles established in *Matchett* also govern our panel as to Griffin's guidelines sentence when the Guidelines were mandatory.").  We held that "[t]he Guidelines—whether mandatory or advisory—cannot be unconstitutionally vague because they do not establish the illegality of any conduct and are designed to assist and limit the discretion of the sentencing judge." *Id.*

The Supreme Court in *Beckles* subsequently adopted the same view of vagueness challenges to the advisory guidelines, holding that "the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause and that § 4B1.2(a)'s residual clause is not void for vagueness."  137 S. Ct. at 895.  *Beckles* did not address whether the vagueness doctrine applies to the mandatory guidelines.

Under the prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).  The holding of the first panel to address an issue is binding, even if a later panel

concludes that the prior case was wrongly decided.[11] *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998).

Chapotin argues that we are not bound by *Griffin* because it has been abrogated by the Supreme Court's decision in *Beckles* and *Dimaya*. "To conclude that we are not bound by a prior holding in light of a Supreme Court case, we must find that the case is 'clearly on point' and that it 'actually abrogate[s] or directly conflict[s] with, as opposed to merely weaken[s], the holding of the prior panel.'" *United States v. Dudley*, 5 F.4th 1249, 1265 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1376 (2022) (quoting *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009)).

Although *Beckles* touched on the distinction between the mandatory and advisory guidelines when it held that the advisory guidelines were not subject to a vagueness challenge, *see Beckles*, 137 S. Ct. at 894, it did not abrogate *Griffin* because it did not decide or squarely address whether the vagueness doctrine applies to the mandatory guidelines. Instead, *Beckles* left "open the question" of whether the pre-*Booker* mandatory guidelines could be subject to a vagueness challenge. *Id.* at 903 n.4 (Sotomayor, J., concurring in the judgment).

Similarly, the Supreme Court's decision in *Dimaya* did not abrogate *Griffin*. Like *Beckles*, *Dimaya* did not decide or squarely address whether the vagueness doctrine applies to the mandatory

---

[11] Thus, Chapotin's argument that *Griffin* was wrongly decided is unavailing.

guidelines scheme. *See generally* 138 S. Ct. 1204. Indeed, *Dimaya* did not involve the guidelines at all, but rather a challenge to 18 U.S.C. § 16(b)'s residual clause. *See id.*

Accordingly, because *Beckles* and *Dimaya* are not "clearly on point" and do not directly conflict with *Griffin*, we remain bound by *Griffin*.

Now we turn to Chapotin's second issue. In an attempt to overcome *Griffin*, he argues that published decisions, like *Griffin*, that are issued in the context of an application for leave to file a second or successive § 2255 motion should not be binding in other types of proceedings such as an initial § 2255 proceeding. However, we have repeatedly rejected this argument, and have held that published three-judge orders issued in the successive application context are binding precedent in our circuit. *See, e.g.,* *Steiner v. United States*, 940 F.3d 1282, 1293 n.4 (11th Cir. 2019) (rejecting argument that decisions issued in the successive application context are not binding in an initial § 2255 proceeding based on prior-panel-precedent rule); *St. Hubert*, 909 F.3d at 345 (holding that decisions published in the successive application context were binding in a direct appeal); *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) (holding that "our prior-panel-precedent rule applies with equal force as to prior panel decisions published in the context of applications to file second or successive petitions. In other words, published three-judge orders issued under [28 U.S.C.] § 2244(b) are binding precedent in our circuit.").

21-10586                Opinion of the Court                15

Accordingly, *Griffin* squarely forecloses Chapotin's career-offender claim, and we are bound to apply *Griffin*. Thus, the district court did not err in denying this claim.[12]

### B.    Issue 3

Chapotin argues that his §§ 924(c) and (o) convictions are invalid post-*Davis* because conspiracy to commit Hobbs Act robbery (Count 2) is no longer a qualifying crime of violence and it is possible the jury relied on the invalid predicate for the §§ 924(c) and (o) convictions, and the district court applied the wrong standard in assessing whether the *Stromberg* error in his case was harmless. Chapotin concedes that his argument essentially fails under our decision in *Granda v. United States*[13] which issued after the district court denied Chapotin's § 2255 motion, but he maintains that *Granda* was wrongly decided. For the reasons that follow, we conclude that Chapotin cannot prevail on this claim.

Section 924(c) criminalizes the use or carrying of a firearm in furtherance of a crime of violence or drug trafficking crime, and provides for a separate, mandatory consecutive sentence. 18

---

[12] Because we conclude that *Griffin* forecloses Chapotin's career-offender claim, we do not address the parties' arguments related to the issues of timeliness and procedural default. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020), *cert. denied*, 142 S. Ct. 124 (2021) (explaining that "a federal court may skip over the procedural default analysis if a claim would fail on the merits in any event").

[13] 990 F.3d 1272 (11th Cir. 2021), *cert. denied* 142 S. Ct. 12333 (2022).

U.S.C. § 924(c)(1). For purposes of § 924(c), "crime of violence" is defined as a felony offense that either:

> (A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3)(A)–(B). In relevant part, § 924(o) provides that "[a] person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, fined under this title, or both." 18 U.S.C. § 924(o).

Section 924(c)(3)(A) is known as the elements clause, and subsection (B) is known as the residual clause. *Davis*, 139 S. Ct. at 2323–24. In *Davis*, the Supreme Court extended its holdings in *Johnson* and *Dimaya* to § 924(c) and held that § 924(c)'s residual clause is unconstitutionally vague. 139 S. Ct. at 2336. We then held that *Davis* announced a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. *In re Hammoud*, 931 F.3d 1032, 1038–39 (11th Cir. 2019). We also held post-*Davis* that conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under the elements clause of § 924(c) and, thus, is not a valid predicate for a § 924(c) charge. *Brown v. United States,* 942 F.3d 1069, 1075–76 (11th Cir. 2019).

In *Granda*, the defendant was convicted of conspiracy to use or carry a firearm during and in relation to a crime of violence or a drug-trafficking crime, in violation of § 924(o). 990 F.3d at 1284. The indictment listed five possible predicates for the § 924(o) offense—three crimes of violence and two drug-trafficking crimes. *Id.* at 1284–85. One of the listed crimes of violence, conspiracy to commit Hobbs Act robbery, was not a valid predicate post-*Davis*. *Id.* at 1285. The jury instructions provided that the jury could find Granda guilty if they found "beyond a reasonable doubt that 'the object of the unlawful plan was to use or carry a firearm during and in relation to, or to possess a firearm in furtherance of, one of the federal drug trafficking crimes, or one of the federal crimes of violence, or both, as charged in counts 1, 2, 3, 4, or 5 of the Superseding Indictment.'" *Id.* The jury returned a general verdict. *Id.* It was thus impossible to tell from the indictment, jury instructions, or the general verdict which count or combination of counts the jury relied on for the § 924(o) offense. *Id.* Following *Davis*, Granda filed a § 2255 motion, arguing, in relevant part, that because the court could not definitely rule out the possibility that the jury relied on an invalid predicate, his § 924(o) conviction had to be vacated. *Id.* We disagreed.

We explained that collateral relief for a *Davis*-based claim is proper only if the court has "grave doubt" about whether a trial error had a "substantial and injurious effect or influence" in determining the verdict. *Id.* at 1292 (quotation omitted); *see also Foster v. United States*, 996 F.3d 1100, 1107 (11th Cir.), *cert. denied*,

142 S. Ct. 500 (2021) ("On collateral review, the harmless error standard mandates that relief is proper only if the . . . court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." (quotation omitted)).  A petitioner must show more than a reasonable possibility that the error was harmful, and we will grant relief "only if the error 'resulted in actual prejudice'" to the petitioner.  *Granda*, 990 F.3d at 1292  (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  Under this standard, the reviewing court must ask directly whether the error substantially influenced the jury's verdict.  *Id.* at 1293.  Thus, it is not enough for a movant to show that the jury *may* have relied on the now-invalid residual clause; he must show a "substantial likelihood" that the jury *did* rely on that subsection.  *Id.* at 1288.  We concluded that "[t]he inextricability of the alternative predicate crimes compel[led] the conclusion that the error Granda complain[ed] about . . . was harmless." *Id.* at 1292–96.  Additionally, we rejected the argument that a *Stromberg* error is not subject to the harmless error standard and that *Stromberg* precludes relying on an alternative valid predicate when conducting a harmless error analysis.  *Id.* at 1293–94.

Like Granda, Chapotin's § 924(c) and § 924(o) convictions had multiple possible predicate offenses—conspiracy to commit Hobbs Act robbery and two drug-trafficking offenses—and these predicate offenses were "inextricably intertwined" as they arose from the same planned robbery.  The jury returned a general

verdict, and neither the indictment nor the jury instructions indicate which count or combination of counts the jury relied on for the § 924(c) and § 924(o) offenses. Although conspiracy to commit Hobbs Act robbery is no longer a valid predicate post-*Davis*, on this record, there can be no grave doubt about whether the inclusion of the invalid predicate had a substantial influence in determining the jury's verdict. The objective of the robbery conspiracy was to obtain cocaine from the drug courier. *Chapotin*, 173 F. App'x at 751. Thus, the jury could not have found that Chapotin's gun use or possession (or his conspiracy to do those things) was connected to his conspiracy to commit Hobbs Act robbery without also finding at that same time that the gun offenses were connected to his conspiracy and attempted possession with intent to distribute cocaine that he planned to procure from the robbery. In other words, "[t]he inextricability of the alternative predicate crimes compel the conclusion that the error [Chapotin] complains about . . . was harmless."[14] *Granda*, 990 F.3d at 1292; *see also Foster*, 996 F.3d at 1107–08 (applying *Granda* to a § 2255 movant's § 924(o) and § 924(c) convictions and holding that any error from the inclusion of an invalid predicate was harmless because the alternative predicate offenses were inextricably intertwined).

---

[14] Because we conclude that Chapotin's *Davis* challenge fails on the merits, we do not reach the parties' arguments concerning procedural default. *Dallas*, 964 F.3d at 1307.

Although Chapotin argues that *Granda* was wrongly decided, as explained previously there is no wrongly decided exception to our prior-panel-precedent rule.  *Steele*, 147 F.3d at 1318.  Accordingly, we affirm the district court's denial of Chapotin's § 2255 motion.

**AFFIRMED.**